

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-23-2005

# USA v. Ordaz

Precedential or Non-Precedential: Precedential

Docket No. 04-1671

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Ordaz" (2005). *2005 Decisions*. Paper 1498.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1498

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-1671

———

UNITED STATES OF AMERICA

v.

COSME ORDAZ,
Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 98-cr-00587-16)

District Judge: Honorable Anita B. Brody

Submitted Under Third Circuit LAR 34.1(a)
October 4, 2004

Before: SLOVITER, BECKER, and STAPLETON, Circuit
Judges

(Filed      February 23, 2005     )

Steven A. Morley
Morley, Surin & Griffin
Philadelphia, PA 19106

    Attorney for Appellant

Kathy A. Stark
Office of United States Attorney
Philadelphia, PA 19106

    Attorney for Appellee

OPINION OF THE COURT

SLOVITER, <u>Circuit Judge</u>.

Appellant Cosme Ordaz appeals following his conviction by a jury and sentence imposed by the District Court.[1]  Ordaz's arguments before this court all pertain to the sentence he received.  This requires that we consider the effect of the recent opinions of the United States Supreme Court in <u>United States v. Booker</u>, __ U.S. __, 125 S. Ct. 736 (2005).

**I.**

Ordaz was one of eighteen defendants charged by a federal grand jury in a superseding indictment with various narcotics and conspiracy offenses.  Specifically, the superseding indictment charged Ordaz with one count of conspiring to distribute cocaine in violation of 21 U.S.C. § 846, and two counts of the use of a telephone in furtherance of this conspiracy in violation of 21 U.S.C. § 843(b).[2]

According to the United States, the individuals charged in the superseding indictment were involved in a narcotics distribution ring, which operated from 1992 until October 1998 under the sobriquet "Ordaz Cocaine Organization" ("OCO").  The superseding indictment alleged that the OCO would obtain cocaine from a source in Miami, Florida and transport the narcotics to Pennsylvania.  The OCO operated primarily out of a bar near Seventh and Tioga Streets in North Philadelphia.  After the bar was closed, the OCO sold off the street.

---

[1]  The District Court had jurisdiction pursuant to 18 U.S.C. § 3231; this Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

[2]  The United States dismissed one of the 21 U.S.C. § 843(b) counts prior to trial.

Among the other defendants charged in the superseding indictment were Lazara Ordaz, Ordaz's sister, and Berto Ordaz, Ordaz's brother. According to the United States, Lazara Ordaz was the OCO's namesake and overall leader. Lazara Ordaz eventually entered a plea of guilty to one count of conspiracy to distribute cocaine, 21 U.S.C. § 846, twenty counts of the use of various communications facilities in furtherance of this conspiracy, 21 U.S.C. § 843(b), and one count of possessing a firearm by a convicted felon, 18 U.S.C. § 922(g)(1).[3]

In contrast to his sister's guilty plea, Ordaz, along with co-defendants William Colon and Berto Ordaz, proceeded to jury trial. The evidence established that Ordaz was incarcerated beginning in 1991– prior to the conspiracy's inception – and was not released until April 1998. The United States conceded that Ordaz was not part of the conspiracy until approximately the final six months of the scheme.

Nonetheless, the government presented evidence that Ordaz, immediately prior to going to prison in 1991, had provided his sister with money and narcotics that she had used to start the OCO. More crucially, the government also presented evidence that, upon his release from prison, Ordaz assisted the OCO by selling and transporting drugs. In addition, the government presented wiretap evidence of several phone calls between Ordaz and other purported OCO members and affiliates.

After a two-week trial, the jury convicted Ordaz of both the conspiracy offense, 21 U.S.C. § 846, and the use of a communication facility in furtherance of the conspiracy offense, 21 U.S.C. § 843(b).[4] Notably, the jury was not asked to render

___

[3] Lazara Ordaz was sentenced to 420 months incarceration. This court subsequently affirmed her conviction, rejecting her claim of ineffective assistance of counsel. United States v. Ordaz, 111 Fed. Appx. 128, 134 (3d Cir. 2004).

[4] The jury also convicted both William Colon and Berto Ordaz on various counts. This court subsequently affirmed in part

any decision with respect to drug weight; likewise, the jury was not asked to make any determination with respect to Ordaz's prior criminal history.

In a Supplemental Memorandum of Law Regarding Sentencing Issues, Ordaz noted that the amount of narcotics attributable to him had not been found by the jury. Relying on Apprendi v. New Jersey, 530 U.S. 466 (2000), Ordaz argued that it was impermissible for the District Court, as opposed to a jury, to make a finding as to drug weight for sentencing purposes. Indeed, Ordaz argued that the District Court could not enhance his sentence on the basis of any factor that would increase his Guidelines range if such a factor was not supported by facts found by a jury. Ordaz urged the District Court to apply a base-offense level of twelve, the lowest base-offense level available under the 1998 Edition of the United States Sentencing Guidelines (which controlled Ordaz's sentencing) for a defendant convicted of a cocaine distribution offense. See U.S.S.G. § 2D1.1(c)(14) (1998). Ordaz further submitted that before his sentence could be increased on the basis of an alleged previous narcotics conviction, see 21 U.S.C. § 841(b)(1)(C); U.S.S.G. § 4B1.1 (1998), the jury needed to find, beyond a reasonable doubt, the fact of this prior conviction.

At the sentencing hearing held on March 10, 2004, the District Court rejected Ordaz's arguments.[5] Instead, the District Court, agreeing with the government, applied a base-offense level of thirty-two, which is the level applicable under the Guidelines when five to fifteen kilograms of cocaine are involved. See U.S.S.G. § 2D1.1(c)(4) (1998). In addition to determining drug weight, the District Court found that Ordaz

---

and reversed in part Berto Ordaz's convictions, United States v. Ordaz, No. 03-3671, 2005 WL 82212 (3d Cir. Jan. 14, 2005), and affirmed Colon's convictions, United States v. Colon, 45 Fed. Appx. 88, 92 (3d Cir. 2002).

[5] For purposes of sentencing, the District Court "grouped" Ordaz's 21 U.S.C. § 846 and 21 U.S.C. § 843(b) convictions. See generally U.S.S.G. § 3D1.2 (1998).

was a leader/organizer of the OCO and added four points to his offense level, see U.S.S.G. § 3B1.1(a) (1998); that Ordaz had used firearms in committing the conspiracy and added two more points, see U.S.S.G. § 2D1.1(b)(1) (1998); and that Ordaz had obstructed justice and thus added another two points, see U.S.S.G. § 3C1.1 (1998).  In total, the District Court calculated that Ordaz had an offense level of forty.

The District Court also found that Ordaz had previously been convicted of several felonies rendering him a career offender.  Under U.S.S.G. § 4B1.1 (1998), this finding resulted in Ordaz having a criminal history category of VI.  Combined with his offense level of forty, Ordaz had a Guidelines range of 360 months to life in prison.  Ultimately, the District Court sentenced Ordaz to a term of 360 months imprisonment.

Ordaz thereafter filed a timely notice of appeal raising several issues.  First, relying on Apprendi and the subsequent decision in Blakely v. Washington, 542 U.S.__ , 124 S. Ct. 2531 (2004) (extending Apprendi and finding unconstitutional certain applications of State of Washington's determinate-sentencing scheme), Ordaz argues that the District Court, by finding drug weight and applying the other enhancements (i.e., leader/organizer, use of a firearm, and obstruction of justice), violated his Fifth and Sixth Amendment right to have all facts which increase the maximum punishment found by a jury beyond a reasonable doubt.[6]  Ordaz further argues that the fact of his purported prior convictions needed to be found by a jury before the District Court could use them to enhance his sentence.[7]

---

[6]  In addition to his Blakely arguments, Ordaz argues that the District Court made factual errors in applying the Guidelines, an issue we leave to the District Court on remand.

[7]  Because in addressing Blakely, the parties have adequately briefed the issues controlling this appeal, we will deny the government's request to submit additional briefs regarding the effect of Booker.

**II.**

In <u>United States v. Booker</u>, __ U.S. __, 125 S. Ct. 738 (2005), the Supreme Court held, <u>inter alia</u>, that "the Sixth Amendment as construed in <u>Blakely</u> does apply to the [Federal] Sentencing Guidelines." <u>Booker</u>, __ U.S. at __, 125 S. Ct. at 747 (Stevens, J.). <u>Booker</u> was decided by two opinions of the Court approved by different majorities.[8] In the first opinion, authored by Justice Stevens for a majority of five, which we will hereafter refer to as "<u>Booker (Stevens)</u>," the Court reaffirmed the holding in <u>Apprendi</u> that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt" and extended that rule to the Sentencing Guidelines. <u>Booker (Stevens)</u>, __ U.S. at __, 125 S. Ct. at 756.

The second opinion, authored by Justice Breyer (hereafter referred to as "<u>Booker (Breyer)</u>") for a majority of five, focused on the remedy the Court announced. The Court held that 18 U.S.C. § 3553(b)(1), the provision of the Sentencing Reform Act of 1984 ("SRA") that makes the Guidelines mandatory, was incompatible with the Court's constitutional ruling and that it must be severed and excised. Similarly, 18 U.S.C. § 3742(e), "the provision that sets forth standards of review on appeal, including <u>de novo</u> review of departures from the applicable Guidelines range," must also be severed and excised because it contains critical cross-references to the section making the Guidelines mandatory. <u>Booker (Breyer)</u>, __ U.S. at __, 125 S. Ct. at 764. The net result was to delete the mandatory nature of the Guidelines and transform them to advisory guidelines for the information and use of the district courts in whom discretion has now been reinstated.[9]

---

[8] Justice Ginsburg was the only Justice who joined both opinions.

[9] Justice Breyer, along with Justices Kennedy and O'Connor and Chief Justice Rehnquist, dissented from Justice Steven's opinion extending the <u>Blakely</u> rule to the Guidelines.

6

In applying the decisions in <u>Booker</u> to the defendant before us, it is necessary to distinguish between the two sentencing issues raised by Ordaz. With respect to Ordaz's challenge to the District Court's determination regarding drug weight and the enhancements (other than for prior convictions), the issue is best determined by the District Court in the first instance and we therefore vacate the sentence and remand for resentencing in accordance with <u>Booker</u>.

We turn to Ordaz's challenge to the enhancement for prior convictions. In this connection, it is helpful to set forth the maximum punishments available under the statutes of conviction.

The penalty provision of 21 U.S.C. § 843 (the statute covering use of a telephone to further drug crime) provides, in relevant part, that:

> [A]ny person who violates this section shall be sentenced to a term of imprisonment of not more than 4 years, a fine under Title 18, or both; except that <u>if any person commits such a violation after one or more prior convictions</u> . . . for violation of this section, or for a felony under any other provision of this subchapter or subchapter II of this chapter or other law of the United States relating to narcotic drugs . . . have become final, <u>such person shall be sentenced to a term of imprisonment of not more than 8 years</u>, a fine under Title 18, or both.

21 U.S.C. § 843(d)(1) (emphasis added). Therefore, due to the

---

Similarly, Justices Scalia, Souter, Stevens, and Thomas dissented from Justice Breyer's severability analysis.

finding by the District Court that Ordaz had a prior federal narcotics conviction, Ordaz was subject to a maximum statutory penalty of eight-years imprisonment for his 21 U.S.C. § 843(b) conviction.[10]

The conspiracy statute of conviction, the other offense for which Ordaz was sentenced, provides that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846. The object of the conspiracy for which Ordaz was convicted was the distribution of cocaine; the penalties for this substantive offense are set forth at 21 U.S.C. § 841(b) and depend upon the type and amount of drugs, as well as whether a defendant had prior narcotics convictions.

The jury convicted Ordaz of conspiring to distribute an unspecified amount of cocaine, a schedule II controlled substance. See 21 U.S.C. § 812(c)(Schedule II)(a)(4). Under § 841(b), the maximum statutory sentence for Ordaz's § 846 conviction would appear to have been twenty years or 240 months incarceration. See 21 U.S.C. § 841(b)(1)(C) ("In the

---

[10] In sentencing Ordaz, the District Court imposed its ultimate sentence of 360 months of incarceration on both the 21 U.S.C. § 843(b) and 21 U.S.C. § 846 convictions. See App. at 733. Even under the pre-Booker framework, this sentence was error as to the § 843(b) conviction because the maximum penalty under that statute is eight years. See United States v. Lee, 359 F.3d 194, 209-10 (3d Cir. 2004) ("[T]he Guidelines instruct[] a court to apply the same sentence to each count in the same group, unless the statutorily authorized maximum for that count is less than the minimum of the guideline range. . . ."). However, because the District Court imposed concurrent sentences for the § 843(b) and § 846 convictions, it is unlikely that Ordaz was prejudiced by this error. Nonetheless, on remand, the District Court is instructed to structure the sentence it imposes in a manner consistent with the statutory maximums.

case of a controlled substance in schedule . . . II . . . such person shall be sentenced to a term of imprisonment of not more than 20 years. . . ."); see also United States v. Vazquez, 271 F.3d 93, 98 (3d Cir. 2001) (en banc) ("In Vazquez's case, drug quantity was neither submitted to the jury nor reflected in its verdict. Therefore, § 841(b)(1)(C) defines Vazquez's prescribed statutory maximum sentence as 20 years."). Section 841(b)(1)(C), however, further provides that "[i]f any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 30 years . . . ." As found by the District Court, Ordaz committed the instant offense after a prior conviction for a felony drug offense had become final; thus, Ordaz's maximum statutory penalty for the conspiracy conviction was thirty years, or 360 months.

Ordaz argues that the fact of prior convictions should have been submitted to the jury. We reject that challenge. Ordaz's argument that the fact of a prior conviction must be found by a jury was rejected by the Supreme Court in Almendarez-Torres v. United States, 523 U.S. 224, 244 (1998) (stating that "to hold that the Constitution requires that recidivism be deemed an 'element' of petitioner's offense would mark an abrupt departure from a longstanding tradition of treating recidivism as 'go[ing] to the punishment only'") (quoting Graham v. West Virginia, 224 U.S. 616, 629 (1912)). Furthermore, in Apprendi the Court specifically exempted prior convictions from its holding, stating that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490 (emphasis added).

Ordaz argues that because of the decision in Blakely, "it is clear that Almendarez-Torres cannot stand." Br. of Appellant at 38. However, the Supreme Court has made clear that "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of

9

overruling its own decisions." Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 484 (1989); see also Agostini v. Felton, 521 U.S. 203, 237 (1997).

We do not gainsay that there is a tension between the spirit of Blakely and Booker that all facts that increase the sentence should be found by a jury and the Court's decision in Almendarez-Torres, which upholds sentences based on facts found by judges rather than juries. Cf. United States v. Mack, 229 F.3d 226, 238 n.5 (3d Cir. 2000) (Becker, J., concurring). Nonetheless, as an inferior federal court we have the responsibility to follow directly applicable Supreme Court decisions. See United States v. Marseille, 377 F.3d 1249, 1257 (11th Cir. 2004) ("Marseille asks this court to extend Apprendi's rationale and overrule Almendarez-Torres. . . . [H]is wish is beyond our powers to grant."); United States v. Losoya-Mancias, 332 F. Supp. 2d 1261, 1265 (D. N.D. 2004) ("This Court acknowledges that the soundness of the prior conviction exception under Almendarez-Torres has again been questioned in light of Blakely. Nevertheless, the Almendarez-Torres exception remains the law of the land until the United States Supreme Court chooses to revisit the matter.").

The holding in Almendarez-Torres remains binding law, and nothing in Blakely or Booker holds otherwise. Thus, because we are bound by Almendarez-Torres, we hold that the District Court's determination regarding the facts of Ordaz's prior convictions did not violate the Sixth Amendment, notwithstanding that the sentences were based, in part, on facts found by a judge rather than a jury.

## III.

For the reasons stated above, we will affirm Ordaz's conviction, vacate his sentence, and remand for resentencing in conformance with the opinion of this court.

_____