

Opinions of the United
States Court of Appeals
for the Third Circuit

8-30-2005

# USA v. Miller-Douglas

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1633

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Miller-Douglas" (2005). *2005 Decisions.* Paper 640.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/640

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-1633

UNITED STATES OF AMERICA

v.

WAYNE E. MILLER-DOUGLAS,

Appellant

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal Action No. 03-cr-00053)
District Judge: Honorable Arthur J. Schwab

Argued June 9, 2005

Before: AMBRO, VAN ANTWERPEN and TASHIMA*, <u>Circuit Judges</u>

(Opinion filed:  August 30, 2005)

Lisa B. Freeland
    Federal Public Defender
Renee Pietropaolo (Argued)
    Assistant Federal Public Defender
W. Penn Hackney, Esquire
Karen S. Gerlach, Esquire
1001 Liberty Avenue, 1450 Liberty Center
Pittsburgh, PA   15222
        Counsel for Appellant

_____

        * Honorable A. Wallace Tashima, Senior United States Circuit Judge for the Ninth
Circuit Court of Appeals, sitting by designation.

Mary Beth Buchanan
   United States Attorney
Kelly R. Labby
   Assistant U.S. Attorney
Brendan T. Conway, Esquire (Argued)
Bonnie R. Schlueter, Esquire
Laura S. Irwin, Esquire
700 Grant Street, Suite 400
Pittsburgh, PA   15219
      Counsel for Appellee

---

OPINION

---

AMBRO, <u>Circuit Judge</u>

Wayne E. Miller-Douglas appeals from his conviction for bank fraud pursuant to 18 U.S.C. § 1344(1).  For the reasons that follow, we affirm his conviction.  However, per our Court's protocol with respect to the sentencing issue appealed in light of *United States v. Booker*, 543 U.S. \_\_\_, 125 S. Ct. 738 (2005), we vacate Miller-Douglas's sentence and remand for resentencing.

## I. Facts and Procedural History

In May 2002 Miller-Douglas was hired through a temporary employment agency as a customer service representative at Citizens Bank ("Citizens") in Pittsburgh, Pennsylvania. Miller-Douglas had full computer access to customer accounts, including the ability to link accounts to ATM cards.  On September 3, 2002, Miller-Douglas's ATM card was linked to the checking and savings accounts of Wayne A. Miller ("Miller"), a Citizens customer, from the workstation of a co-worker who sat near Miller-Douglas.

2

Later that day, withdrawals totaling $1,000 were made from Miller's account using Miller-Douglas's ATM card and PIN number.

On September 4, 2002, Miller-Douglas's daily ATM withdrawal limit was increased at the workstation of another employee who sat near him. Over the next two days, fifteen withdrawals were made from Miller's account using Miller-Douglas's ATM card. On September 5, Miller-Douglas called one of his co-workers, told her that the bank branch had mistakenly linked another person's savings account to his ATM card, and had her unlink the accounts.

On September 13, 2002, Miller-Douglas re-linked Miller's accounts to his ATM card at his own workstation, quit his job, and began preparing to move to Baltimore. Over the course of the next several days, Miller-Douglas's ATM card was used to make several charges to (and withdrawals from) Miller's accounts, including some made in Baltimore. In total, from September 3 to September 16, forty-eight withdrawals totaling $24,813 were made from Miller's checking and savings accounts. Several time-stamped photographs presented at trial showed Miller-Douglas making withdrawals from various ATM machines on days and times that correspond to days and times when bank records show his ATM card was used to withdraw funds from Miller's account.

After Miller notified the bank about the depletion of his funds, Citizens began a fraud investigation that led to Miller-Douglas. When confronted by Citizens' fraud investigator, Charles DeLuca, Miller-Douglas denied wrongdoing, but he also offered to pay the money back. DeLuca testified that Citizens credited back the money to Miller's

3

accounts and that Citizens was therefore left "holding the bag." Citizens later attempted

to recover this money from Miller-Douglas's account, but it was only able to recoup

$211.43.

A grand jury indicted Miller-Douglas on one count of bank fraud in violation of 18

U.S.C. § 1344(1), and the charge went to trial. The District Court gave the following jury

instruction (changing some language on the intent element pursuant to Miller-Douglas's

request but declining to use the precise language he proposed):

> In order to prove the defendant committed the crime of bank fraud in violation of Section 1344(1), the government must establish each of the following elements beyond a reasonable doubt.
>
> First, that there was a scheme to defraud a financial institution and that that scheme, that fraudulent scheme[,] was material. A fraudulent scheme is material if it has a natural tendency to influence[,] or is capable of influencing[,] a decision or action of the financial institution.
>
> Second, that the defendant knowingly executed or attempted to execute the fraudulent scheme with the intent to victimize the institution by causing an actual or potential loss of its own funds, where the scheme involved the withdrawal of funds from a bank's custody and control, the government must show the withdrawal exposed the bank to some form of potential liability as a result of fraud.
>
> And, third, that at the time of the execution of the scheme, the financial institution or its deposits were insured, in the case of Citizens Bank, by the Federal Deposit Insurance Corporation.
>
> The terms, scheme or artifice, are defined to include any plan, pattern, or course of action, including false or fraudulent pretenses, or misrepresentations, intended to deceive others in order to obtain something of value, such as money, from the institution to be deceived.

The jury found Miller-Douglas guilty, and he was sentenced to twelve months of imprisonment and three years of supervised release. The Court also ordered Miller-Douglas to pay Citizens restitution in the amount of $24,813. Miller-Douglas appeals both his conviction and his sentence.[1]

## II. Discussion

### A.    *Standard of Review*

Our review of the District Court's statement of the legal standard in a jury instruction is plenary. *United States v. Johnstone*, 107 F.3d 200, 204 (3d Cir. 1997). In determining whether the instruction articulated the appropriate legal standard to the jury, "we must examine the charge in its entirety and not limit ourselves to particular sentences or paragraphs in isolation." *Id.*

Our review of the sufficiency of the evidence to support a conviction is "particularly deferential . . . ." *United States v. Cartwright*, 359 F.3d 281, 286 (3d Cir. 2004). "We must view the evidence in the light most favorable to the Government and sustain the verdict if any rational juror could have found the elements of a crime beyond a reasonable doubt." *Id.* (internal quotation omitted).

### B.    *Analysis*

Miller-Douglas was charged with knowingly executing, or attempting to execute, a scheme or artifice to defraud a financial institution under subsection (1) of the federal

---

[1]We have jurisdiction under 28 U.S.C. § 1291.

bank fraud statute.[2]  He now argues that his conviction should be reversed because: (1)

the District Court's jury instruction on the specific intent element of the bank fraud statute

was incorrect, and (2)  the Government did not produce evidence that Citizens had

suffered a loss or that it was liable to Miller for stolen funds, and thus the evidence was

insufficient to support the conviction.  We address each argument in turn.

> 1.      Jury Instruction

In *United States v. Thomas*, 315 F.3d 190 (3d Cir. 2002), we held that specific

intent is required to prove bank fraud under both subsections of the statute.  *Id.* at 197,

199.  We stated that the bank must have been the deliberate target of the defendant's

fraudulent scheme,[3] as Congress's main concern in passing the statute was "allay[ing]

---

[2]That statute provides, in its entirety:
> Whoever knowingly executes, or attempts to execute, a scheme
> or artifice –
> (1)      to defraud a financial institution; or
> (2)      to obtain any of the moneys, funds, credits, assets,
>          securities, or other property owned by, or under the
>          custody or control of, a financial institution, by means of
>          false or fraudulent pretenses, representations, or
>          promises;
> shall be fined not more than $1,000,000 or imprisoned not more
> than thirty years, or both.

18 U.S.C. § 1344.

[3]Miller-Douglas contends that our later decision in *United States v. Khorozian*, 333
F.3d 498, 505 (3d Cir. 2003), conflicts with *Thomas* and reads the specific intent
requirement out of the statute because it states that "§ 1344's specific intent requirement
is satisfied if an individual commits an act that could put the bank at risk of loss."  We
note, however, that this statement was made in the context of determining whether the
evidence was sufficient to support the conviction in *Khorozian*, not as part of an analysis
of the intent requirement.  Moreover, the remainder of *Khorozian* makes clear that a
defendant must intentionally target the bank to be convicted of bank fraud.  *Id.* at 505,

6

crimes that undermined public confidence in banking institutions." *Id.* at 200. In addition, the Government must show that the defendant actually caused the bank harm or exposed it to a risk of loss. *See Thomas*, 315 F.3d at 196 (stating that "[s]ubsection (1) . . . requires a nexus of harm or loss to the bank").

Miller-Douglas contends that the District Court's jury instruction incorrectly applied these legal standards because it did not make clear that there were "two distinct inquiries" before the jury—(1) "Did the Government prove beyond a reasonable doubt that the bank was faced with liability, whether by way of statutory law, common law, or business practice[,] and (2) if so, did the [G]overnment also prove that the defendant intended to so harm the bank." (App. Br. at 26). This argument is unpersuasive.

Under subsection (1) of the bank fraud statute, the Government is not required to show that the defendant's conduct subjected the bank to liability. *See Thomas*, 315 F.3d at 200 ("Clearly, . . . when the scheme targets the bank as its direct victim, not a depositor, and the bank suffers a loss of its funds, there is no civil liability requirement."). A showing that the bank was subject to some form of potential civil liability by virtue of the defendant's conduct is only required for cases prosecuted under subsection (2) of the statute. *Id.* at 200, 206. Thus, contrary to Miller-Douglas's assertion, the District Court was not required to instruct the jury that it must find that Citizens was faced with liability in order to convict him of bank fraud under subsection (1).

Miller-Douglas also argues that the District Court only articulated the specific

508. Thus, Miller-Douglas's argument cannot succeed.

7

intent element of bank fraud with regard to subsection (1) of the statute and did not apply it to subsection (2). The pertinent portion of the District Court's instruction informed the jurors that they should convict if, in addition to determining that the other elements were met, they concluded that

> the defendant knowingly executed or attempted to execute the fraudulent scheme with the intent to victimize the institution by causing an actual or potential loss of its own funds, where the scheme involved the withdrawal of funds from a bank's custody or control, the government must show the withdrawal exposed the bank to some form of potential liability as a result of fraud.

As stated earlier, we must look at the charge as a whole, *Johnstone*, 107 F.3d at 204, and the entirety of the instruction makes clear that the jury must find that the defendant knowingly engaged in the fraudulent scheme.[4] Moreover, the instruction given by the District Court is virtually identical to our summary of the bank fraud requirements in *Thomas*. *See* 315 F.3d at 206. Because the District Court's jury instruction in this case comports with our statement of the required elements of bank fraud and adequately communicated the specific intent requirement to the jury, we uphold it.[5] Accordingly, we

---

[4]We also note that, as Miller-Douglas was charged under subsection (1), the portion of the instruction dealing with subsection (2) had little relevance to his case.

[5]Miller-Douglas also challenges the District Court's failure to give a jury instruction on his theory of the defense. "A court errs in refusing a requested instruction only if the omitted instruction is correct, is not substantially covered by other instructions, and is so important that its omission prejudiced the defendant." *United States v. Davis*, 183 F.3d 231, 250 (3d Cir. 1999). Assuming *arguendo* that Miller-Douglas's instruction was correct, he was not prejudiced by its omission because his counsel presented his theory of the case to the jury in the course of closing arguments at trial. The District Court therefore did not err in refusing to instruct the jury on Miller-Douglas's theory of his

8

must now address Miller-Douglas's argument that the evidence was insufficient to sustain his conviction.

### 2. Sufficiency of the Evidence

Miller-Douglas argues that the evidence presented by the Government was insufficient to sustain his conviction because the Government (1) did not introduce evidence that Citizens was actually or potentially liable to Miller for his loss, and (2) failed to establish beyond a reasonable doubt that Miller-Douglas intended to victimize the bank. As stated above, we apply a deferential standard when reviewing sufficiency of the evidence and, looking at the evidence in the light most favorable to the Government, we must "sustain the verdict if any rational juror could have found the elements of the crime beyond a reasonable doubt." *Cartwright*, 359 F.3d at 286.

As discussed at Section II(B)(1) above, under subsection (1) of the bank fraud statute the Government is required to show only that the bank suffered an actual loss or was exposed to a risk of loss and is not required to demonstrate that the bank was exposed to potential civil liability as a result of the defendant's conduct. The record in this case shows that both Miller (the victim) and DeLuca (Citizens' fraud investigator) testified that Citizens reimbursed Miller, and the evidence presented at trial demonstrated that Miller-Douglas withdrew $24,813 from Miller's accounts. The evidence also showed that when Citizens attempted to recover the proceeds of the fraud from Miller-Douglas's account, it was only able to recover $211.43. Therefore, the evidence supported a finding

defense.

9

of actual loss by the bank of at least $24,601.57.[6]

Miller-Douglas next contends that the Government failed to establish beyond a reasonable doubt that he intended to victimize the bank. In his view, his conduct falls within the class of cases referenced in *Thomas* in which "[t]he deception of a bank [is] an incidental part of a scheme primarily intended to bilk a bank customer." 315 F.3d at 200. When the true target of fraud is an individual and not a bank, we have found the evidence insufficient to support a bank fraud conviction because the requisite intent had not been proven. *Id.* at 202 (holding that evidence of intent to target the bank was insufficient when the defendant convinced her employer, an elderly woman, to write valid checks to cash or in the defendant's name, which the defendant then used for personal gain, as the bank was not exposed to any risk of liability for the defendant's fraudulent conduct).

By contrast, the evidence in our case supported a finding that Miller-Douglas's

---

[6]In addition, if the Government had been required to prove that Citizens was subject to potential liability through statutory or common law or business practice, the evidence was also sufficient to support a conclusion that this requirement was met here. DeLuca's testimony that Citizens reimbursed Miller for his depleted funds was sufficient evidence from which a reasonable juror could conclude that Citizens had a business practice of reimbursing customers when they suffered a loss like Miller's. *Cf. United States v. Bonallo*, 858 F.2d 1427, 1430 n.2, 1434 n.9 (9th Cir. 1988) (holding that evidence was sufficient to uphold a bank fraud conviction when a defendant employed by a bank accessed several customers' accounts using ATM and PIN information from the bank's computerized database and stole money from those accounts, and commenting that "[i]t is common knowledge that banks reimburse the accounts of wrongly charged customers").

As in *Bonallo*, Miller-Douglas's status as a bank employee rendered the depletions of its customer's account similar to wrongful charges for which good business practice required Citizens to reimburse its customers. Accordingly, rational jurors could have inferred from the evidence presented at trial that, in addition to suffering an actual loss, Citizens was also exposed to the risk of liability based on its business practice by virtue of Miller-Douglas's conduct.

fraud was directed at the bank, whose internal mechanisms he abused to perpetrate his scheme, as well as at Miller. The jury heard testimony regarding, *inter alia*, how Miller-Douglas used his position to link his and Miller's accounts and his offer to pay the money back when confronted by Citizens, and it saw photographs of him making several of the forty-eight ATM withdrawals at issue. In assessing whether a defendant possessed the requisite criminal intent, "one must look to the entire circumstances of [the] defendant's conduct . . . ." *Id.* at 202 (internal quotation omitted). Rational jurors could conclude that Miller-Douglas's entire course of conduct—particularly his obvious abuse of his position (which undermined Citizens' integrity and thus implicated the underlying purpose of the bank fraud statute)—demonstrated beyond a reasonable doubt that he intended to victimize the bank as well as its customer. *See Bonallo*, 858 F.2d at 1434 n.9 (holding that evidence of intent was sufficient because "when [the defendant] falsified the records so that the accounts of other customers would be charged for the withdrawals, he was effectively harming the Bank[,] which was obliged to reimburse those customers . . . [and] [t]he misrepresentation was [thus] directed toward the Bank, and possibly toward the customers as well").

The evidence was therefore sufficient to sustain Miller-Douglas's conviction.

### III. Sentencing

Miller-Douglas also challenges his sentence based on the Supreme Court's recent decision in *United States v. Booker*, 543 U.S. ___, 125 S. Ct. 738 (2005). Having determined that the sentencing issues Miller-Douglas raises are best determined by the

11

District Court in the first instance, our protocol is to vacate the sentence and remand for resentencing in accordance with *Booker*. *See United States v. Davis*, 407 F.3d 162 (3d Cir. 2005) (opinion sur denial of rehearing *en banc*); *United States v. Ordaz*, 398 F.3d 236 (3d Cir. 2005).

## IV. Conclusion

For the reasons stated above, the jury instruction in this case was not erroneous, and the evidence was sufficient to show a violation of § 1344(1). We therefore affirm Miller-Douglas's conviction. His sentence, on the other hand, is vacated and remanded for resentencing in accordance with *Booker*.