

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-29-2007

# USA v. Coker

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4056

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Coker" (2007). *2007 Decisions.* Paper 1409.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1409

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-4056

UNITED STATES OF AMERICA

v.

LAMONT COKER,

Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 04-cr-00659)
District Judge: Honorable Timothy J. Savage

Submitted Under Third Circuit LAR 34.1(a)
March 6, 2007

Before: SLOVITER and AMBRO, Circuit Judges
THOMPSON,[*] District Judge

(Opinion filed: March 29, 2007)

OPINION

AMBRO, Circuit Judge

---

[*]Honorable Anne E. Thompson, Senior United States District Judge for the District of
New Jersey, sitting by designation.

Lamont Coker pled guilty to one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1), and was sentenced to a prison term of 192 months followed by five years of supervised release. He appeals to us on two issues: (1) whether the District Court erred in denying his motion to suppress the firearm found in the vehicle in which he was a passenger as well as statements made by him to law enforcement officers following his arrest; and (2) whether the Government presented sufficient evidence at the sentencing hearing to classify him as an armed career criminal. We affirm the District Court's rulings.

I. **Background**

On the afternoon of July 20, 2004, Police Officers Donald Liebsch and Rahim Montgomery were located near the intersection of Germantown Avenue and Clearfield Street in Philadelphia, Pennsylvania when they heard gunshots. Already in their police car, the two officers rushed to Germantown and Allegheny Avenues and saw a black male, later identified as Jorge Prado, standing on the running board of a Cadillac Escalade firing a gun. Officer Liebsch, gun drawn, ordered Prado to drop his weapon. Prado complied and was immediately placed on the ground and put in handcuffs.

Prado then pointed to a Crown Victoria as well as a Ford Taurus with Georgia license plates, told the officers to "get those guys," and indicated that each car was involved in the incident. Officer Montgomery and a third police officer quickly took the occupants of the Crown Victoria into custody near the scene of the shooting. The officers

observed two guns inside that car. Liebsch, having already broadcast flash information over the police radio about the Taurus, amended his broadcast to warn that the occupants of the Taurus should be considered armed and dangerous.

A few minutes after Liebsch's broadcast, Police Officer Chauncey Ellison, working with his partner, Officer Michael Alexander, noticed a black male walk away from the area of the shootout and enter a gold Taurus with Georgia plates. The officers, who were in an unmarked vehicle and in plain clothes, followed the car as it drove away.

Officer Patrick Sitek, while in police headquarters, also heard Liebsch's radio transmission. Consequently, Sitek and his fellow officers joined in the pursuit of the Taurus. Sitek saw the car near the intersection of Rising Sun Avenue and Marshall Street. The officer maneuvered his car to block the Taurus' passage. Sitek then got out of his car, drew his gun, jumped on the hood of the Taurus, and ordered the occupants to get out. Both the driver and the passenger, later identified as Coker, made furtive movements below the dashboard that indicated to the officer that each occupant was trying to reach for something. They eventually raised their hands after the officer commanded them to do so several times.

Coker and the driver were removed from the passenger compartment, placed in handcuffs, and escorted to the back seat of Officer Ellison's car. While in the police vehicle, Coker was asked his name and address by Officer Ellison. Coker answered and asked if he was going to be charged with gun possession. While Ellison was asking Coker questions (without any *Miranda* warnings), Officer Sitek entered the Taurus and

-3-

searched the passenger side glove compartment. He found a 9mm handgun. Coker was promptly arrested and taken to the police station. He was interviewed there by Detective Glenn Via and, after voluntarily waiving his *Miranda* rights, Coker admitted that he possessed the handgun in order to kidnap Prado and hold him for ransom.

Prior to trial Coker moved to suppress the handgun and any statements made at the police station. The District Court denied the motion. Coker then entered a conditional guilty plea reserving the right to appeal both the ruling on the motion to suppress and any sentence the Judge may impose. At the sentencing hearing the District Court adopted the findings contained in the Presentence Report. It noted that the base offense level for Coker's crime under the federal Sentencing Guidelines was 24. It was increased to 28 because Coker possessed the firearm during an attempted kidnapping. The Judge increased another six points to 34 because Coker is deemed an armed career criminal under U.S.S.G. § 4B1.4(b)(3)(A) in light of three prior convictions for serious drug offenses. This number was reduced to 32 because Coker accepted responsibility. The resulting Guideline range was 210 to 262 months. The Judge ultimately sentenced Coker to 192 months, a sentence below the Guideline range but above the fifteen year minimum sentence required in 18 U.S.C. § 924(e)(1).

II. **Discussion**

A. **Suppression of Evidence**

Coker argues that the information the police received prior to stopping the Taurus was insufficient to justify an investigatory stop. In addition, he contends that police actions following the stop amounted to an arrest, not an investigatory stop, thereby requiring a showing of probable cause.

An investigatory (or *Terry*) stop requires only that the police have a reasonable suspicion based on articulable facts that a crime has been committed, *Terry v. Ohio*, 392 U.S. 1, 21 (1968), whereas the arrest of a suspect requires that the police have probable cause to do so, a more stringent standard. *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). The District Court denied Coker's motion to suppress because the police had a reasonable suspicion based on articulable facts to justify the initial stop and because the officers' actions following the stop did not transform a valid investigatory stop into an arrest.[1] We review the District Court's denial of a motion to suppress for clear error as to the underlying factual findings and we exercise plenary review over any question of law. *United States v. Coward*, 296 F.3d 176, 179 (3d Cir. 2002).

---

[1] The District Court alternatively ruled that Coker did not have standing to challenge the search. It reasoned that a passenger who neither owns nor leases the car does not have standing to challenge its search. *Rakas v. Illinois*, 439 U.S. 128, 132-34 (1978); *United States v. Baker*, 221 F.3d 438, 442 (3d Cir. 2000). We need not discuss this issue since the District Court's denial of Coker's motion to suppress is justified on another ground.

As for whether the police have reasonable suspicion to believe that "criminal activity may be afoot" when they do an investigatory stop, information given to the police by a witness or an informant can justify such a stop if the information is reliable. *Adams v. Williams*, 407 U.S. 143, 146-47 (1972). According to the Supreme Court and our Court, a witness' recent report carries with it a strong indicia of reliability. *See id. United States v. Nelson*, 284 F.3d 472, 482 (3d Cir. 2002). Additionally, information obtained by the police via face-to-face contact is more reliable because "the officer has an opportunity to assess the informant's credibility and demeanor." *United States v. Valentine*, 232 F.3d 350, 354 (3d Cir. 2000). An informant's reliability also increases when information provided to police is later corroborated. *See Alabama v. White*, 496 U.S. 325, 332 (1990).

Coker incorrectly argues that the information the officers relied on was insufficient and too unreliable to warrant their stop of the Taurus. Officer Liebsch saw Prado involved in a gunfight. Prado then informed the officer that men driving a Crown Victoria and a Taurus with Georgia license plates were trying to get him. Based on Prado's tip, a Crown Victoria was stopped near the scene of the incident and two guns were retrieved. This seizure corroborated much of Prado's account of the incident, making it reasonable for the officers to conclude that the information concerning the Taurus' involvement in the incident was also accurate. Officer Liebsch therefore acted reasonably in believing that the passengers in the Taurus may be armed. This belief not only justifies, but warrants, an investigatory stop of it.

-6-

The fact that Officer Liebsch (the officer who received the information directly from Prado) did not actually stop the Taurus is irrelevant. Our analysis "does not turn on whether those relying on the [bulletin] were themselves aware of the specific facts which led their colleagues to seek their assistance," but instead turns on whether the officer who issued the bulletin had a reasonable suspicion. *United States v. Hensley*, 469 U.S. 221, 231 (1985). As stated above, Officer Liebsch had a reasonable suspicion that the occupants of the Taurus were involved in the gunfight with Prado and that the vehicle's passengers were armed. Relying on Liebsch's alert, Officer Sitek and his fellow narcotics officer were justified in stopping the Taurus. Supreme Court precedent does not require the officer who relied on the alert, specifically Officer Sitek, to have independent information that would warrant the investigatory stop. *Id.*

The officers' actions following the stop were also proper within the context of an investigatory stop. When making such a stop, police officers "may take such steps as are 'reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop.'" *United States v. Edwards*, 53 F.3d 616, 619 (3d Cir. 1995) (quoting *Hensley*, 469 U.S. at 235). Specifically, an officer may search

> the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden . . . if the officer possesses a reasonable belief based on specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

*Michigan v. Long*, 463 U.S. 1032, 1049-50 (1983) (internal quotations and citations omitted). *Long* further states that it is irrelevant whether the occupants of the vehicle

have been removed from the car before the search is conducted, because "if the suspect is not placed under arrest, he would be permitted to reenter his vehicle and he will then have access to any weapons inside." *Id.* at 1051.

After Officer Sitek blocked the Taurus' passage he got out of his car, jumped on the hood of the suspects' vehicle with his gun drawn, and ordered both passengers to put their hands up. The officer observed both the passenger and driver make furtive movements toward the floor of the car. Based on the alert issued by Liebsch that the passengers of the Taurus may be armed, it was reasonable for Officer Sitek to believe that the occupants of the car were reaching for weapons. After they were removed from the car, Officer Sitek conducted a limited search of the passenger compartment based on his reasonable suspicion that Coker, *et al.*, were reaching for weapons during the initial confrontation. In the glove compartment, Officer Sitek found a 9mm handgun. These actions were reasonable to protect the safety of all of the officers at the scene because both occupants of the Taurus were not yet under arrest and would have eventually been allowed to reenter their vehicle, giving them access to the handgun. In this context the officer's limited search of the automobile contemporaneously with a valid investigatory stop is reasonable.

Coker's final argument is that a *Terry* analysis does not apply here because the officers' actions when they stopped the vehicle went beyond a mere investigatory stop to an arrest that lacked probable cause. This argument plays out as follows: the officers' act of blocking the Taurus' passage, Sitek's act of jumping on the hood with gun drawn and

-8-

handcuffing Coker and removing him from the car, in the aggregate, resulted in a *de facto* arrest. As stated, police "may take such steps as are reasonably necessary to protect their personal safety and maintain the status quo during the course of a stop." *Edwards*, 53 F.3d at 619 (internal quotations and citations omitted). Most courts, including ours, have concluded that blocking a suspect's vehicle even with guns drawn is not an arrest *per se*. *Id.* at 619-20; *see also United States v. Perea*, 986 F.2d 633, 636, 644 (2d Cir. 1993) (blocking suspect's car with three unmarked cars and approaching with weapons drawn was not an arrest). Also, "there is no per se rule that pointing guns at people or handcuffing them constitute[s] an arrest." *Baker*, 50 F.3d at 1193. However, the use of guns and handcuffs during an investigatory stop must be justified, and we are required to look "at the intrusiveness of all aspects of the incident in the aggregate." *Id.* This includes the length and the scope of the detention. *Edwards*, 53 F.3d at 620 (citing *Baker*, 50 F.3d at 1192).

The officers had ample justification to draw their weapons after they stopped the Taurus. They had reliable information that the vehicle was involved in a shootout earlier in the day with another vehicle. As Officer Sitek approached the car and jumped on the hood he saw the car's occupants reaching toward the floor. The officer was reasonable to assume that both Coker and the driver were reaching for a gun. Placing them in handcuffs thus was justified for officers' safety.

There is also no evidence in the record that Coker's detention was unreasonably long. As noted, following the stop he was handcuffed and placed in the back of a police

car. When Officer Sitek found the handgun in the glove compartment of the Taurus he had probable cause to arrest Coker, and he did so. We detect nothing indicating that the actions of the police before the arrest went beyond an investigatory stop.[2]

We conclude that the officers had reasonable suspicion to stop the Taurus. Their actions following the stop were proper and did not turn an investigatory stop into an arrest. As the search and seizure were constitutional, the statements made to the police following the arrest will not be suppressed. Accordingly, the District Court properly denied Coker's motion to suppress both the gun and the statements made to the police.

B. **Sentencing**

Coker also asserts that the evidence presented by the Government at sentencing was insufficient to establish the application of the armed career criminal enhancement. The Armed Career Criminal Act, 18 U.S.C. § 924(e), imposes a 15-year term of imprisonment on defendants who are convicted under 18 U.S.C. § 922(g)(1) of possessing a firearm and who have three prior convictions for a serious drug offense.[3] Coker does not deny his three previous controlled substance convictions in Pennsylvania. He instead challenges the evidence the District Judge relied on to make the determination that Coker was indeed

---

[2] Because we agree with the District Court that the officers' actions did not transform the *Terry* stop into an arrest, it is unnecessary for us to consider whether there was probable cause to arrest Coker before the gun was found in the glove compartment. *See Edwards*, 53 F.3d at 619.

[3] A serious drug offense is defined as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance…for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii).

-10-

an armed career criminal.

The fact of prior convictions is not an element of the crime and need not be found by a jury. *See Almendarez-Torres v. United States*, 523 U.S. 224, 239-248 (1998); *United States v. Ordaz*, 398 F.3d 236, 240-41 (3d Cir. 2005). There is no *per se* rule that certified copies of judgments of conviction are required before a judge "may determine that the defendant's prior convictions are for [serious drug offenses] within the meaning of [18 U.S.C. § 924(e)(2)(A)(ii)]." *United States v. Watkins*, 54 F.3d 163, 168 (3d Cir. 1995). That a criminal defendant was previously convicted of a crime may be confirmed by the terms of the plea agreement, the charging document, the transcript of colloquy between judge and defendant, or some other comparable judicial record of this information. *See Shepard v. United States*, 544 U.S. 13, 16 (2005) (holding that inquiry under the Armed Career Criminals Act to determine statutory elements of prior conviction is limited to judicial records and may not include documents that simply purport facts, like police reports).

The District Court here was presented during the sentencing hearing with the bill of information and the criminal complaint outlining three previous convictions in the Philadelphia Court of Common Pleas. Each document, certified by the Philadelphia Court of Common Pleas and given to the District Court, shows that Coker was convicted three separate times for controlled substance crimes involving cocaine base. The information provided in these documents "enabled the district court to ascertain with certainty the statutes of conviction [35 Pa. Cons. Stat. § 780-113(a)(3))] and [that] the

-11-

statutes of conviction encompass only conduct that falls within" the definition of "serious drug offense." *Watkins*, 54 F.3d at 168.

Coker's reliance on *Shepard* to argue that the Government did not adequately prove the fact of convictions is misplaced. The District Court did not look outside the judicial record to determine if Coker's previous three convictions were serious drug offenses. The statute he violated multiple times and the court documents provided by the Government at sentencing were sufficient to make such a determination.

\* \* \* \* \*

We affirm the District Court's decision not to suppress evidence and Coker's sentence.