**UNITED STATES of America**

v.

**Kourtney Dwayne KAMA, Appellant.**

No. 06–2693.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Sept. 10, 2007.

Filed Oct. 19, 2007.

Francis C. Barbieri, Jr., Office of United States Attorney, Philadelphia, PA, for United States of America.

Christopher G. Furlong, Media, PA, for Appellant.

Before: SCIRICA, Chief Judge, RENDELL and FUENTES, Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Chief Judge.

Following a jury trial, Kourtney Dwayne Kama was convicted of distribution of cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1) (Count 1), conspiracy to engage in the business of dealing firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A) (Count 2), and possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g) and 924(e) (Count 3). He challenges his conviction and sentence. We will affirm both.

Because we write for parties familiar with the facts, we set forth the necessary facts within the discussion.

### I.

When reviewing a challenge to the sufficiency of evidence, although the scope of review is plenary, *United States v. Rieger,* 942 F.2d 230, 232 (3d Cir.1991), we apply a "particularly deferential standard of review." *United States v. Dent,* 149 F.3d 180, 187 (3d Cir.1998). We review the evidence in the light most favorable to the government and uphold the conviction "if any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *United States v. Gibbs,* 190 F.3d 188, 197 (3d Cir.1999); *see also Rieger,* 942 F.2d at 232 ("We 'must sustain the verdict if there is substantial evidence, viewed in the light most favorable to the [g]overnment, to uphold the jury's decision.'" (quoting *Burks v. United States,* 437 U.S. 1, 17, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978))); *United States v. Pungitore,* 910 F.2d 1084, 1129 (3d Cir. 1990) ("The evidence need not unequivocal-

ly point to the defendant's guilt as long as it permits the jury to find the defendant guilty beyond a reasonable doubt.").

Kama was convicted of conspiracy to willingly engage in the business of dealing in firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A). He contends the government failed to identify any co-conspirator who agreed to participate with him in the unlawful dealing of firearms. Additionally, Kama argues that, independent of his own statements, no evidence was presented to show any agreement with or overt act by the unknown co-conspirators. Therefore, Kama concludes, since he cannot conspire with himself or a government informant, the jury had insufficient grounds to convict him on Count 2.

In order to obtain a conviction for conspiracy, the government must show a "unity of purpose [between the alleged conspirators], the intent to achieve a common goal, and an agreement to work together toward that goal." *Dent*, 149 F.3d at 188. "The government must prove each element beyond a reasonable doubt, but may do so solely by circumstantial evidence." *Id.* (citing *United States v. Barrow*, 363 F.2d 62, 64 (3d Cir.1966)). Additionally, one can be convicted of conspiracy even though the identities of the co-conspirators are unknown. *See United States v. Obialo*, 23 F.3d 69, 72 (3d Cir.1994) ("The failure of the government to be able to name and personally identify the other conspirator is not fatal to a conspiracy conviction."); *United States v. Allen*, 613 F.2d 1248, 1253 (3d Cir.1980) ("[T]he identity of the other members of the conspiracy is not needed, inasmuch as one person can be convicted of conspiring with persons whose names

are unknown." (quoting *Rogers v. United States*, 340 U.S. 367, 375, 71 S.Ct. 438, 95 L.Ed. 344 (1951))).

■ The evidence presented [1] provides a substantial basis for a rational trier of fact to conclude beyond a reasonable doubt that Kama engaged in conspiracy with one or more persons other than the undercover officers and the confidential informant. The evidence clearly established that Kama sold .58 grams of crack cocaine to the officers, sold the officers a .357 Magnum and ammunition, and offered to sell the officers additional firearms.

Further, in discussions with the undercover officers involving the sale of firearms, Kama referred to unidentified co-conspirators on multiple occasions. On June 22, 2001, Kama told undercover Officer Leporace that "his man" had a .357 Magnum and a .44 Magnum for sale. On July 17, 2001, Kama told undercover Detective Gonbar that he had a Tech–9 and two sawed-off shotguns to sell and attempted to act as a broker between his "main man" and the undercover officers. Detective Gonbar sent Officers Mateo and Santiago to conduct the firearm transaction. Upon meeting at a bar, Kama explained that his "main man" was upset that Kama had brought Mateo and Santiago into the area. While talking to the officers, Kama identified a Hispanic male who had entered the bar as the "main man." When the "main man" left the bar, Kama followed and upon returning explained he could not make a deal because he was only a "middle man" and the "main man" did not feel comfortable entering into a firearm transaction with Mateo and Santiago.

---

1. "The evidence presented at trial consisted of the testimony of four undercover police officers from the Reading Police Department, videotape surveillance of the contacts between the undercover police officers and Defendant, tape-recorded telephone conversations between Defendant and the undercover officers, and the testimony of a confidential informant who was working for the Reading Police Department...." *United States v. Kama*, No. 02–403, 2005 WL 3433718, at *2 (E.D.Pa. Dec.12, 2005).

Finally, in recorded conversations between Kama and Detective Gonbar, Kama referred to his "people" on multiple occasions and when discussing the other people involved in the firearm transactions Kama stated: "I'm like 50% middle and 50% myself."

Kama contends that his statements were mere puffing and without corroborating evidence identifying another person working with him, the government has failed to meet its burden of proof. But, "[a] defendant's admissions provide acceptable evidence of others' participation; no specific evidence, such as the identity of the coconspirators and proof of their acts, is required. To hold otherwise would be to contradict the rule of *Allen* and other cases that one may be found guilty of conspiring with 'persons unknown.'" *Government of the Virgin Islands v. Hoheb*, 777 F.2d 138, 141 (3d Cir.1985). Such admissions of conspiracy "made before the crime occurred need not be corroborated." *Id.* at 142.

When viewed in the light most favorable to the government, substantial evidence exists for a rational jury to find beyond a reasonable doubt that Kama knowingly and purposefully entered into an agreement to sell firearms with one or more person or persons other than the undercover officers and the confidential informant and at least one overt act was done in furtherance of the conspiracy.

## II.

■ During sentencing, the district court determined that Kama was an armed career criminal under 18 U.S.C. § 924(e). Kama contends that the Sixth Amendment requires the fact of prior convictions to be submitted and proven to the jury and seeks a remand for re-sentencing. In *United States v. Ordaz*, we rejected an analogous challenge. 398 F.3d 236, 240–41

(3d Cir.2005). A district court's determination regarding facts of a defendant's prior convictions does not violate the Sixth Amendment, "notwithstanding that the sentence was based, in part, on facts found by a judge rather than a jury." *Id.* at 241 (relying upon *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998)).

Kama contends that *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) call into question the authority of *Almendarez–Torres*. However, in response to a similar argument by Ordaz, we held that *Almendarez–Torres* "remains binding law, and nothing in *Blakely* or *Booker* holds otherwise." *Ordaz*, 398 F.3d at 241. "[A]s an inferior federal court, we have the responsibility to follow directly applicable Supreme Court decisions." *Id.*

The District Court's determination of the facts of Kama's prior convictions does not violate the Sixth Amendment. Accordingly, we will affirm Kama's sentence.

## III.

The District Court denied Kama's motion for a new trial under Rule 33 of the Federal Rules of Criminal Procedure. On appeal, Kama contends he is entitled to a new trial under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), because the government failed to disclose all information concerning the confidential informant, Warren Mayo.

In order to establish a *Brady* violation, "it must be shown that (1) evidence was suppressed; (2) the evidence was favorable to the defense; and (3) the evidence was material to guilt or punishment." *United*

*States v. Risha*, 445 F.3d 298, 303 (3d Cir.2006). "Evidence is 'material' if there is a reasonable probability that pretrial disclosure would have produced a different result at trial. The question is not whether disclosure would have resulted in a different verdict, but whether suppression of evidence 'undermined confidence in the outcome of the trial.'" *Id.* at 303 n. 5 (quoting *Kyles v. Whitley*, 514 U.S. 419, 434–35, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)). Determination of a reasonable probability "requires consideration of the totality of the circumstances, including possible effects of non-disclosure on the defense's trial preparation." *United States v. Perdomo*, 929 F.2d 967, 971 (3d Cir.1991). "Evidence that tends to impeach prosecution witnesses may be material under this standard." *Slutzker v. Johnson*, 393 F.3d 373, 387 (3d Cir.2004).

■ Kama asserts two violations of *Brady*. First, he claims the government withheld favorable evidence by failing to inform defense counsel of the full content of Mayo's testimony.[2] Kama points to the actual trial testimony of Mayo as evidence of the government's knowledge. This claim fails the suppression prong of the *Brady* test. At trial, the parties stipulated that neither the undercover officers nor the prosecutor spoke to Mayo about a "ripoff." Since the government was un-

aware of the existence of such evidence, Kama cannot reasonably argue that the government suppressed evidence. *See Hollman v. Wilson*, 158 F.3d 177, 180 (3d Cir.1998) ("Where the prosecutor had no actual or constructive possession of information, there can be no *Brady* violation for failure to disclose it.").

■ Second, Kama notes the government failed to disclose Mayo's prior actions as a cooperating witness approximately 20 years prior to the events in question. Kama learned about Mayo's past involvement with the government for the first time while cross-examining Mayo. Citing *Risha*, Kama claims that he was denied the opportunity to impeach Mayo because he was unable to fully investigate the nature of Mayo's prior involvement with the police and prosecuting authorities.[3] This evidence is not material under *Brady*.

Prior to trial, the government provided Kama with information concerning Mayo's cooperation in this case, including the cash paid to Mayo and the letter written by the prosecutor to the State Parole Board on Mayo's behalf. Based upon that information and knowledge of Mayo's criminal history, Kama's attorney thoroughly cross-examined Mayo. As a result, the jury was well aware of Mayo's arrest and conviction history,[4] his prior drug use, and all bene-

---

2. Specifically, Kama contends that the government knew that Mayo would testify to Kama's intent to "ripoff" the police officers.

3. *Risha* is distinguishable from the present case. In *Risha*, the government failed to disclose an informant's "expectation of leniency" in future proceedings against him. *Risha*, 445 F.3d at 303 n. 5. Such an expectation of future benefit in exchange for the present testimony was material impeachment evidence. *Id.* Additionally, since the informant was the " 'sole witness' to offer incriminating evidence," information tending to impeach him was deemed essential to the defense. *Id.* However, in the present case,

Kama was informed of all benefits Mayo received or would receive for cooperating in Kama's case. The undisclosed information solely concerns past benefits provided to Mayo for work on an unrelated case approximately twenty years earlier. Further, in addition to Mayo's testimony, the government presented substantial evidence of Kama's guilt through the testimony of several other witnesses.

4. Mayo's prior convictions consisted of, among others, drug possession, forgery, and retail theft.

fits he received for working as an informant in Kama's case. Any further questioning about Mayo's past involvement with the government would not have affected the outcome of the trial. There is no reasonable probability that Kama would have been found not guilty had the government disclosed this information to Kama's counsel.

We find no violation of *Brady* here. Accordingly, Kama is not entitled to a new trial.

## IV.

We will affirm both Kama's judgment of conviction and his sentence.