

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-15-2006

# USA v. Leahy

Precedential or Non-Precedential: Precedential

Docket No. 03-4490

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Leahy" (2006). *2006 Decisions*. Paper 1503.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1503

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

Nos. 03-4490/03-4184/03-4542/03-4560/04-2912

———

No. 03-4490

UNITED STATES OF AMERICA,

v.

PAUL J. LEAHY,

Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania

District Judge:
Honorable J. Curtis Joyner
(D.C. No. 01-cr-00260-2)

———

No. 03-4184

UNITED STATES OF AMERICA,

v.

JAMES C. FALLON,

Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania

District Judge:
Honorable James T. Giles
(D.C. No. 02-cr-00324)

No. 03-4542

UNITED STATES OF AMERICA,

v.

TIMOTHY SMITH,

Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania

District Judge:
Honorable J. Curtis Joyner
(D.C. No. 01-cr-00260-1)

———

No. 03-4560

UNITED STATES OF AMERICA,

v.

DANTONE, INC.,
T/A CARRIAGE TRADE AUTO AUCTION,

Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania

District Judge:
Honorable J. Curtis Joyner
(D.C. No. 01-cr-00260-3)

———

No. 04-2912

UNITED STATES OF AMERICA,

v.

KENNARD GREGG,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania

District Judge:
Honorable John R. Padova
(D.C. No. 04-cr-00103)

_____

Argued: November 1, 2005
Before: SCIRICA, Chief Judge, SLOVITER, ALITO[*], ROTH,
MCKEE, RENDELL, BARRY, AMBRO, FUENTES, SMITH,
FISHER, VAN ANTWERPEN, ROSENN[**] and BECKER
Circuit Judges.

(Filed February 15, 2006)

_____

IAN M. COMISKY (Argued)
JORDANA COOPER
MATTHEW D. LEE
Blank Rome LLP
130 North 18th Street

_____

[*]Then Judge, now Justice, Alito was on the panel for this
case but was elevated to the United States Supreme Court on
January 30, 2006. This opinion is filed by quorum of the panel. 28
U.S.C. § 46(d).

[**]Judge Rosenn heard oral argument on this case, but passed
away on February 7, 2006.

One Logan Square
Philadelphia, PA 19103

ROBERT E. WELSH, JR.
Welsh & Recker
2000 Market Street
Suite 2903
Philadelphia, PA 19103

JEFFREY M. MILLER
Nasuti & Miller
150 South Independence Mall West
Suite 1064
Philadelphia, PA 19106

ATTORNEYS FOR APPELLANTS PAUL J. LEAHY,
TIMOTHY SMITH AND DANTONE INC.

ROBERT EPSTEIN (Argued)
DAVID MCCOLGIN (Argued)
ELAINE DeMASSE
MAUREEN KEARNEY ROWLEY
Defender Association of Philadelphia
Federal Court Division
601 Walnut Street
Suite 540 West - The Curtis Center
Independence Square West
Philadelphia, PA 19106

ATTORNEYS FOR APPELLANTS JAMES C. FALLON AND
KENNARD GREGG

PATRICK L. MEEHAN
LAURIE MAGID
MARY E. CROWLEY
JOSEPH G. POLUKA
ROBERT A. ZAUZMER (Argued)
Office of the United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

DAVID FARNHAM
United States Department of Justice
P.O. Box 386
Washington DC 20044

JOSHUA L. DRATEL
Law Offices of Joshua L. Dratel
14 Wall Street, 28th Floor
New York, NY 10005

ATTORNEY FOR AMICUS CURIAE PARTY NATIONAL
ASSOCIATION OF CRIMINAL DEFENSE LAWYERS

———

OPINION OF THE COURT

———

FUENTES, Circuit Judge.

We ordered rehearing en banc in three separate appeals to determine whether the District Courts' orders of restitution and forfeiture violated defendants' Sixth Amendment right to trial by jury.

## I. Background

In United States v. Paul J. Leahy, No. 03-4490, following trial, a jury found defendant Dantone, Inc. ("Dantone"), and its two senior managers, defendants Paul Leahy and Timothy Smith, guilty of engaging in, and aiding and abetting, bank fraud in violation of 18 U.S.C. § 1344.[1] Defendants' convictions stemmed from their defrauding various banks out of profits derived from Dantone's auctioning of 311 repossessed and after-lease cars on behalf of the banks. At sentencing, the District Court imposed prison sentences upon Leahy and Smith and entered orders of forfeiture in the sum of $418,657 and restitution in the sum of $408,970, jointly and

---

[1] This case was tried together with United States v. Dantone, Inc., No. 03-4560, and United States v. Timothy Smith, No. 03-4542.

severally, against all three defendants. Dantone, Leahy and Smith appeal both their convictions and the orders of forfeiture and restitution.[2]

In United States v. Kennard Gregg, No. 04-2912, after being arrested and charged for twice attempting to sell counterfeit money to a government informant, defendant Gregg pled guilty to two counts of dealing in counterfeit obligations in violation of 18 U.S.C. § 473. Gregg was sentenced to six months in prison and three years of supervised release, and ordered to pay restitution to the federal government in the amount of $350. He appeals only the restitution order.

In United States v. James C. Fallon, No. 03-4184, a jury convicted defendant Fallon of one count of wire fraud in violation of 18 U.S.C. § 1341, and three counts of mail fraud in violation of 18 U.S.C. § 1343 in connection with marketing his company's Derma Peel skin treatment without FDA approval. Fallon was sentenced to 12 months in prison and ordered to pay restitution in the amount of $55,235. Fallon appeals both his conviction and the District Court's restitution order.

In these appeals, all five of the defendants – Dantone, Leahy, Smith, Gregg and Fallon – challenge their respective restitution orders on Sixth Amendment grounds, arguing that, in accordance with United States v. Booker, 125 S. Ct. 738 (2005), the facts underlying the orders should have been submitted to a jury and established by proof beyond a reasonable doubt. Additionally, on the same grounds, Dantone, Leahy and Smith challenge their orders of forfeiture. We called for rehearing en banc to consider three sentencing issues:

1. Whether the decision of the Supreme Court in Booker applies to forefeiture;

2. Whether orders of restitution are a criminal penalty;

3. Whether Booker applies to orders of restitution under the Victim and Witness Protection Act (the

---

[2]Defendants' appeal of their criminal convictions in this case, as well as in United States v. Fallon, infra, will be addressed in separate opinions.

"VWPA")[3] and the Mandatory Victims Restitution Act (the "MVRA").[4]

---

[3]The VWPA reads in pertinent part:

> (a)(1)(A)  The court, when sentencing a defendant convicted of an offense under this title . . . , other than an offense described in section 3363A(c), may order, in addition to or, in the case of a misdemeanor, in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of such offense . . . .
> (a)(1)(B)(i)  The court, in determining whether to order restitution under this section, shall consider–
> > (I) the amount of the loss sustained by each victim as a result of the offense; and
> > (II) the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.
> (a)(1)(B)(ii)  To the extent that the court determines that the complication and prolongation of the sentencing process resulting from the fashioning of an order of restitution under this section outweighs the need to provide restitution to any victims, the court may decline to make such an order.

18 U.S.C. § 3663.

[4]Passed by Congress in 1996, the MVRA augmented and partially superseded the VWPA by requiring district courts to impose restitution on defendants convicted of certain offenses without regard to their ability to pay. See 18 U.S.C. § 3663A(a)(1) ("[T]he court shall order, in addition to, or in the case of a misdemeanor, in addition to or in lieu of, any other penalty authorized by law, that the defendant make restitution to the victim of the offense . . . .") (emphasis added).  Both the VWPA and the MVRA are enforced via 18 U.S.C. § 3664, which states in pertinent part:

7

Because, in our view, restitution under the VWPA and the MVRA is not the type of criminal punishment that evokes Sixth Amendment protection under Booker, we conclude that the amount a defendant must restore to his or her victim need not be admitted by the defendant or proved to a jury beyond a reasonable doubt. As to forfeiture, based upon the Supreme Court's decision in Libretti v. United States, 516 U.S. 29 (1995), we conclude that the amount a defendant must forfeit also need not be admitted or proved to a jury beyond a reasonable doubt.

## II. Forfeiture and Booker

We consider first the constitutionality of the District Court's forfeiture order in Leahy. Following trial, the District Court entered an order of forfeiture in the sum of $418,657, finding that the Government had proven by a preponderance of the evidence that this sum constituted the defendants' "proceeds" from their fraudulent activity within the meaning of 18 U.S.C. § 982(a)(2).[5] The Leahy defendants contend that the imposition of forfeiture by the District Court under a preponderance of the evidence standard violated their Sixth Amendment right in light of the Supreme Court's decisions in Blakely v. Washington, 542 U.S. 296 (2004),

---

> In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant.

18 U.S.C. § 3664(f)(1)(A).

[5]18 U.S.C. § 982(a)(2) states in pertinent part:

> The court, in imposing sentence on a person convicted of a violation of, or a conspiracy to violate –
> > (A) section . . . 1344 of this title, affecting a financial institution . . . .
> shall order that the person forfeit to the United States any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation.

8

and <u>Booker</u>.

The <u>Leahy</u> defendants' Sixth Amendment argument with respect to forfeiture cannot be reconciled with the Supreme Court's decision in <u>Libretti</u>. In that case, the defendant entered a guilty plea in the middle of trial and agreed in his plea agreement to forfeit considerable property. <u>Libretti</u>, 516 U.S. at 33-34. He subsequently argued that his forfeiture plea colloquy was inadequate, in part because the District Court did not explain the right to a jury determination regarding forfeiture and in part because the District Court failed to obtain his express waiver of that right. <u>Id.</u> at 37-38. The Supreme Court acknowledged that, pursuant to what was then Federal Rule of Criminal Procedure 31(e), a special jury verdict was required to permit an order of forfeiture.[6] <u>Id.</u> at 48-49. It nonetheless concluded that there was no Sixth Amendment right to a jury determination, rejecting the defendant's claim that an express description and waiver of the jury right was a necessary component of the plea proceeding:

> Without disparaging the importance of the right provided by Rule 31(e), our analysis of the nature of criminal forfeiture as an aspect of sentencing compels the conclusion that the right to a jury verdict on forfeitability does not fall within the Sixth Amendment's constitutional protection. Our cases have made abundantly clear that a defendant does not enjoy a constitutional right to a jury determination as to the appropriate sentence to be imposed.

<u>Id.</u> at 49. <u>Libretti</u> thus flatly holds that the Sixth Amendment is not implicated in the forfeiture context. <u>See</u> <u>id.</u> at 40-41 (rejecting defendant's argument that forfeiture "is not 'simply' an aspect of sentencing, but is, in essence, a hybrid that shares elements of both

---

[6]Former Rule 31(e) stated: "[I]f the indictment or the information alleges that an interest or property is subject to criminal forfeiture, a special verdict shall be returned as to the extent of the interest or property subject to forfeiture, if any." Rule 31(e) and other procedural rules governing the forfeiture of assets in a criminal case were consolidated into a new Rule 32.2 governing "Criminal Forfeiture."

9

a substantive charge and a punishment imposed for criminal activity").

The Leahy defendants contend that Libretti has been undercut by Blakely and Booker to such an extent that its precedential value has been eroded. Even assuming that to be true, we nonetheless note that as a Court of Appeals, we are not free to ignore the Supreme Court's holding in Libretti, nor do we possess the authority to declare that the Supreme Court has implicitly overruled one of its own decisions. See United States v. Ordaz, 398 F.3d 236, 241 (3d Cir. 2005) ("[I]f a precedent of [the Supreme Court] has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions.") (quoting Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 484 (1989)).

Defendants argue in the alternative that Libretti should be distinguished on the grounds that it addressed only the question of whether there exists a Sixth Amendment jury right to forfeiture determinations, not the constitutionally-mandated burden of proof, which they contend must be "beyond a reasonable doubt" after Booker. While there may be some tension between Booker and Libretti to the extent that the Libretti Court cites with approval its earlier statement in McMillan v. Pennsylvania that "[t]here is no Sixth Amendment right to jury sentencing, even where the sentence turns on specific findings of fact," we are not dissuaded from our conclusion that Libretti controls the forfeiture issue here. 516 U.S. at 49 (quoting McMillan, 477 U.S. 79, 93 (1986)).

We further observe that the other Courts of Appeals that have considered this issue have reached the same conclusion. See United States v. Fruchter, 411 F.3d 377, 382-83 (2d Cir. 2005) (rejecting arguments that Sixth Amendment applies to forfeiture and that Booker and Blakely require proof beyond reasonable doubt in forfeiture determinations; further holding that "Libretti remains the determinative decision"), cert. denied sub nom. Braun v. United States, 126 S. Ct. 840 (2005); United States v. Hall, 411 F.3d 651, 655 (6th Cir. 2005) (stating that "we fail to see how Booker . . . allows us to turn our back on the Supreme Court's prior ruling in this area (Libretti)"); United States v. Tedder, 403 F.3d 836, 841 (7th Cir. 2005) (holding in pertinent part that Libretti

10

remains binding Supreme Court precedent with respect to forfeiture and Sixth Amendment) cert. denied, 126 S. Ct. 827 (2005).

For the foregoing reasons, we join our sister Courts of Appeals and hold that, even after Booker, the Sixth Amendment's trial by jury protection does not apply to forfeiture, as Libretti remains Supreme Court authority by which we are bound.[7]

## III. The Nature of Restitution

Before turning to Booker's applicability to restitution under the MVRA and the VWPA, we consider whether restitution under these statutes is criminal or civil in nature. If we deem restitution to be civil, there is no Sixth Amendment concern because that Amendment's protections apply only to criminal trials. We note first that restitution combines features of both criminal and civil penalties, as it is, on the one hand, a restoration to the victim by defendant of ill-gotten gains, while it is, at the same time, an aspect of a criminal sentence.

This is not the first time we have addressed this issue. In United States v. Syme, after reviewing several of our earlier cases, we stated that "[w]e consider restitution orders made pursuant to criminal convictions to be criminal penalties." 276 F.3d 131, 159 (3d Cir. 2002). Syme accordingly held that "restitution ordered under 18 U.S.C. § 3663 [the VWPA] constitutes 'the penalty for a crime' within the meaning of Apprendi." Id.; see also United States v. Edwards, 162 F.3d 87, 91 (3d Cir. 1998) (holding that restitution ordered under MVRA constitutes punishment for purpose of Ex Post Facto Clause analysis); United States v. Sleight, 808 F.2d 1012, 1020 (3d Cir. 1987) (finding that under Federal Probation Act, restitution "remains inherently a criminal penalty"); United States v. Palma, 760 F.2d 475, 479 (3d Cir. 1985) (holding

---

[7]We note that Booker expressly states that 18 U.S.C. § 3544, a provision of the sentencing law that requires a district court to impose forfeiture on a defendant convicted under RICO, is still "perfectly valid." Booker, 125 S. Ct. at 764 (Breyer, J., remedial majority opinion). Although the forfeiture provision identified in Booker is not the same provision at issue in this case, "Booker itself suggests that a district court's forfeiture determination under [the RICO forfeiture statute] does not offend the Sixth Amendment." Fruchter, 411 F.3d at 382.

11

that restitution ordered under VWPA is criminal penalty).

The Supreme Court has touched on this issue as well. In Pasquantino v. United States, a wire fraud case in which the MVRA applied, the Court noted:

> Petitioners answer that the recovery of taxes is indeed the object of this suit, because restitution of the lost tax revenue to Canada is required under the [MVRA]. We do not think it matters whether the provision of restitution is mandatory in this prosecution. Regardless, the wire fraud statute advances the Federal Government's independent interest in punishing fraudulent domestic criminal conduct, a significant feature absent from all of petitioners' revenue rule cases. The purpose of awarding restitution in this action is not to collect a foreign tax, but to mete out appropriate criminal punishment for that conduct.

125 S. Ct. 1766, 1777 (2005) (footnote omitted and emphasis added). Pasquantino suggests that whether the restitution order being reviewed is mandatory or discretionary does not change the analysis. Moreover, and more importantly, Pasquantino clearly states that an award of restitution under the MVRA or the VWPA is a "criminal punishment."

This latter stance is consistent with earlier Supreme Court precedent. In Kelly v. Robinson, 479 U.S. 36 (1986), the Court reviewed a Connecticut restitution statute in order to determine whether a restitution order was dischargeable in bankruptcy. The Court initially observed that "[t]he criminal justice system is not operated primarily for the benefit of victims." Id. at 52. The Court went on to state that "[a]lthough restitution does resemble a judgment 'for the benefit of' the victim," it is imposed in the context of a criminal sentence and "[t]he victim has no control over the amount . . . or the decision to award" restitution. Id. Additionally, the Court noted that "the decision to impose restitution generally does not turn on the victim's injury, but on the penal goals of the state and the situation of the defendant." Id. Quoting the Bankruptcy Judge who decided the underlying issue, the Court finally observed that

12

> [u]nlike an obligation which arises out of a contractual, statutory or common law duty, here the obligation is rooted in the traditional responsibility of a state to protect its citizens by enforcing its criminal statutes and to rehabilitate an offender by imposing a criminal sanction intended for that purpose.

Id. (citation omitted and emphasis added).  In sum, the Kelly Court held that restitution granted in a state proceeding as a condition of probation could not be discharged because it constituted a criminal penalty enforced "for the benefit of" the government and did not serve primarily as "compensation for actual pecuniary loss" under § 523(a)(7) of the bankruptcy code.[8]  See id. at 51-52.

Of the other Courts of Appeals that have addressed this issue, only the Seventh and Tenth Circuits have held that restitution is a civil rather than a criminal penalty.  See  United States v. Newman, 144 F.3d 531, 542 (7th Cir. 1998) (holding "restitution authorized by the VWPA (and mandatorily imposed under the MVRA) is not a criminal punishment for purposes of the Ex Post Facto Clause"); United States v. Nichols, 169 F.3d 1255, 1279-80 (10th Cir. 1999) (adopting Seventh Circuit's Newman holding that Ex Post Facto Clause does not bar application of restitution under

---

[8]Section 523(a)(7) reads:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –

. . .

(7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty--
(A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or
(B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition . . . .

11 U.S.C. § 523(a)(7).

MVRA). In contrast, the Fifth, Eighth, Ninth, Eleventh and D.C. Circuits recognize that restitution, when ordered in connection with a criminal conviction, is a criminal penalty.[9]

Based upon our reading of Supreme Court precedent, we decline to overturn our precedent in Syme and instead reaffirm our view, consistent with the view of the majority of the Circuits to have addressed this issue, that restitution ordered as part of a criminal sentence is criminal rather than civil in nature.

## IV. Restitution and Booker

We next turn to whether Booker applies to orders of restitution. The Leahy defendants were ordered to pay restitution under the VWPA, and the defendants in both Gregg and Fallon were ordered to do so under the MVRA. For purposes of determining whether Booker applies to orders of restitution under these two Acts, we believe the distinction between the permissive language of the VWPA and the mandatory language of the MVRA, see supra notes 3 and 4, is immaterial. See Pasquantino, 125 S. Ct. at 1777 (noting that whether restitution is mandatory or discretionary does not change government's interest in enforcing orders of restitution). The primary issue we must therefore address is whether a defendant's constitutional right to have certain facts found exclusively by a jury beyond a reasonable doubt, or admitted by the defendant, bars a judge from determining the sum of restitution he or she must pay. We hold that Booker extends no such protection to criminals under the Sixth Amendment.

---

[9] See United States v. Rico Indus., Inc., 854 F.2d 710, 714 (5th Cir. 1988) ("Restitution is a criminal penalty."); United States v. Williams, 128 F.3d 1239, 1241 (8th Cir. 1997) ("We conclude an order of restitution under the MVRA is punishment for Ex Post Facto Clause purposes."); United States v. Miguel, 49 F.3d 505, 509 (9th Cir. 1995) ("The [VWPA] also clearly indicates that restitution is a penalty available to sentencing courts regardless of other criminal penalties that may be imposed."); Creel v. Comm'r of Internal Revenue, 419 F.3d 1135, 1140 (11th Cir. 2005) ("[A]n order to pay restitution under 18 U.S.C. § 3663 [the VWPA] is a criminal penalty rather than a civil penalty."); United States v. Bapack, 129 F.3d 1320, 1327 n.13 (D.C. Cir. 1997) (endorsing the Second Circuit's approach in Thompson).

## A. Fact-Finding Under the Sixth Amendment

The Sixth Amendment provides that all criminal defendants "shall enjoy the right to a speedy and public trial, by an impartial jury." In the series of recent decisions culminating in <u>Booker</u>, the Supreme Court considered in depth the respective roles of judge and jury in the context of fact-finding and criminal sentencing. The central theme of the <u>Booker</u> line of cases has been that facts increasing the maximum penalty for a crime must be either admitted or proven to a jury beyond a reasonable doubt. The reasoning of these cases also led to a corresponding de-emphasis in the Court's Sixth Amendment jurisprudence on the rigid classification of facts increasing penalties as either elements of a crime or sentencing factors. After <u>Booker</u>, the inquiry governing what facts may be found by judges now turns on the effect of the fact-finding on the defendant's punishment, rather than the fact's legislative classification.

The Court first articulated this principle in <u>Jones v. United States</u>, where it stated in a footnote that "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." 526 U.S. 227, 243 n.6 (1999). The Court affirmed this principle in <u>Apprendi v. New Jersey</u>, where it held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490 (2000). Four years later, the Court clarified in <u>Blakely</u> that the relevant "statutory maximum" for <u>Apprendi</u> purposes is the maximum sentence a judge may impose based solely on facts reflected in the jury verdict or admitted by the defendant. <u>Blakely</u>, 542 U.S. at 303-04.

In addition to refining its <u>Apprendi</u> holding, the <u>Blakely</u> Court rejected the presumption that "the jury need only find whatever facts the legislature chooses to label elements of the crime, and . . . those it labels sentencing factors – no matter how much they may increase the punishment – may be found by the judge." 542 U.S. at 306. The constitutional problem with such a presumption is that it allows legislatures to subvert the Sixth Amendment jury right by terming practically any fact a "sentencing fact," thereby reducing the number of facts that need to be proven to a jury for conviction. <u>See</u> <u>id.</u> at 306-07 ("The jury could not

function as circuitbreaker in the State's machinery of justice if it were relegated to making a determination that the defendant at some point did something wrong, a mere preliminary to a judicial inquisition into the facts of the crime the State <u>actually</u> seeks to punish.") (emphasis in original).  This concern, foreshadowed in <u>Apprendi</u>,[10] dovetailed with the Court's greater concern that "[w]hen a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment, and the judge exceeds his proper authority." <u>Id.</u> at 304 (internal citation and quotation marks omitted).  Thus, the legislative labeling of a fact as an element or sentencing factor is no longer significant in determining whether it may or may not be constitutionally found by a judge.  Rather, under <u>Blakely</u>, the central consideration is the effect a given fact may have on a defendant's maximum punishment.  In short, for purposes of sentencing under <u>Apprendi</u> and <u>Blakely</u>, whether a fact is labeled a sentencing fact or an element of the offense is of no consequence.

The <u>Booker</u> Court confirmed the insignificance of legislative labeling in this context by asserting that "the characterization of a fact or circumstance as an 'element' or 'sentencing factor' is not determinative of the question 'who decides,' judge or jury." 125 S. Ct. at 749 (citation omitted). More important for our purposes, the <u>Booker</u> Court reaffirmed the reasoning of <u>Apprendi</u> and <u>Blakely</u> and applied it to invalidate the Federal Sentencing Guidelines, holding that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." <u>Id.</u> at 756.  Thus, the key inquiry in determining the applicability of <u>Booker</u> to an order of restitution under the VWPA or the MVRA is whether a

_____

[10]In a footnote, the <u>Apprendi</u> Court commented that "when the term 'sentence enhancement' is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict.  Indeed, it fits squarely within the usual definition of an 'element' of the offense."  530 U.S. at 494 n.19.

16

judge's calculation of the sum a defendant must restore to his or her victim constitutes an increase in punishment exceeding that authorized by plea or jury verdict, in violation of the Sixth Amendment.

**B.    Restitution Does Not Exceed the Statutory Maximum**

Under both the VWPA and the MVRA, when a defendant is convicted of certain specified offenses, restitution is authorized as a matter of course "in the full amount of each victim's losses." 18 U.S.C. § 3664(f)(1)(A).  Hence, under a plain reading of the governing statutory framework, the restitution amount authorized by a guilty plea or jury verdict – the full amount of loss – may not be exceeded by a district court's restitution order; that is, a district court is not permitted to order restitution in excess of that amount. In imposing restitution, a district court is thus by no means imposing a punishment beyond that authorized by jury-found or admitted facts.   Though post-conviction judicial fact-finding determines the amount of restitution a defendant must pay, a restitution order does not punish a defendant beyond the "statutory maximum" as that term has evolved in the Supreme Court's Sixth Amendment jurisprudence.   See Booker, 125 S. Ct. at 749 (defining "statutory maximum" as "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant") (citing Blakely, 542 U.S. at 303) (emphasis in original); see also United States v. Sosebee, 419 F.3d 451, 462 (6th Cir. 2005) ("Nor does [] Booker's analysis of the Sixth Amendment affect restitution, because a restitution order for the amount of loss cannot be said to 'exceed the statutory maximum' provided under the penalty statutes.").   There can therefore be no Booker violation in the imposition of restitution under the VWPA or the MVRA.

Defendants argue that until a district court makes a factual finding as to the amount of loss, restitution is not authorized in any amount.  As we read the statute, once a defendant is convicted of an offense covered by the VWPA or the MVRA, a district court must (or in the case of the VWPA, unquestionably may) order restitution, and in order to fulfill this mandate, the court must determine the amount of loss pursuant to 18 U.S.C. § 3664(f)(1)(A). Under the defendants' view, the conviction itself yields a restitution amount of zero dollars, and the factual finding

17

of the amount of loss therefore increases the sentence beyond the maximum sum authorized by the facts, in violation of Booker. On the contrary, we see the conviction as authorizing restitution of a specific sum, namely the "full amount of each victim's loss"; when the court determines the amount of loss, it is merely giving definite shape to the restitution penalty born out of the conviction.[11] Thus, there is no restitution range under 18 U.S.C. § 3664(f)(1)(A) that starts at zero and ends at "the full amount of each victim's losses"; rather, the single restitution amount triggered by the conviction under the MVRA, or permitted under the VWPA, is the full amount of loss. For these reasons, we join the Fifth, Sixth, Seventh, Eighth, Ninth and Tenth Circuits and hold that Booker does not apply to orders of restitution under the MVRA and VWPA.[12]

---

[11]We agree with our dissenting colleagues that "the relevant inquiry is not of form, but of effect–does the required finding [of the amount of loss] expose the defendant to a greater punishment than that authorized by the jury's verdict?" McKee Dis. Op. at 12 (quoting Apprendi, 530 U.S. at 494). As we note throughout this Subsection, however, we do not believe that determining the "full amount of each victim's losses" in any way "exposes" a defendant to a greater punishment than that "authorized by the jury's verdict." Indeed, the jury's verdict automatically triggers restitution in the "full amount of each victim's losses," and under the MVRA restitution is not only "authorized" (as it undoubtedly also is under the VWPA), it is required. We therefore cannot accept our dissenting colleagues assertion that uncovering the specific sum lost by a defendant's victims amounts to exposure to a punishment greater than that authorized by a jury's verdict, as full restitution is explicitly authorized under the two Acts at issue here. This logic of course extends to defendants who plead guilty as well.

[12]See United States v. Garza, 429 F.3d 165, 170 (5th Cir. 2005) (per curiam) ("We agree with our sister Circuits, who have uniformly held that judicial fact-finding supporting restitution orders does not violate the Sixth Amendment."); Sosebee, 419 F.3d at 461 (6th Cir. 2005) ("Given existing Sixth Circuit precedent and recent decisions of the other circuits on this issue, we now conclude that Booker does not apply to restitution and, thus, that Sosebee's Sixth Amendment challenge has no merit."); United

18

This conclusion is consistent with our view that orders of restitution have little in common with the prison sentences challenged by the defendants in Jones, Apprendi, Blakely and Booker. In those cases, the Supreme Court was faced with "exceptional" and "enhanced" sentences that added anywhere from two to ten years to the prison terms authorized by the facts found by the jury or pled to by the defendants. See Blakely, 542 U.S. at 299; see also Booker, 125 S. Ct. at 747 n.1. In contrast, the restitution ordered in Leahy, Gregg and Fallon was explicitly authorized by the defendants' pleas and convictions, and merely required the defendants to return property and proceeds obtained as a result of the offense of conviction.

Restitution is, at its essence, a restorative remedy that compensates victims for economic losses suffered as a result of a defendant's criminal conduct. In this sense, even though restitution is a criminal punishment, it does not transform a defendant's punishment into something more severe than that authorized by pleading to, or being convicted of, the crime charged. Rather, restitution constitutes a return to the status quo, a fiscal realignment whereby a criminal's ill-gotten gains are returned to their rightful owner. In these circumstances, we do not believe that ordering a convicted defendant to return ill-gotten gains should be construed as increasing the sentence authorized by a conviction pursuant to

---

States v. George, 403 F.3d 470, 473 (7th Cir. 2005) ("We have accordingly held that Apprendi v. New Jersey . . . does not affect restitution . . . and that conclusion is equally true for Booker."); United States v. May, 413 F.3d 841, 849 (8th Cir. 2005) ("[S]everal circuits have affirmatively rejected the notion that Apprendi, Blakely, or Booker affect the manner in which findings of restitution can be made . . . . These cases are persuasive."); United States v. Bussell, 414 F.3d 1048, 1060 (9th Cir. 2005) ("In contrast to its application of the Sentencing Guidelines, the district court's orders of restitution and costs are unaffected by the changes worked by Booker."); United States v. Visinaiz, 428 F.3d 1300, 1316 (10th Cir. 2005) (noting that "Blakely and Booker do not apply to restitution" because "[i]n the Tenth Circuit, restitution is not a criminal punishment") (citations omitted).

19

Booker.[13]

## V. Conclusion

For the foregoing reasons, we conclude that restitution under the VWPA and the MVRA is a criminal penalty and that the Sixth Amendment right to jury determinations of certain facts as articulated in Booker does not apply to forfeiture or to orders of restitution imposed as part of a criminal sentence under those two statutes.

––––––

[13]We recognize, of course, that the key question under the Booker analysis is whether the judicial fact-finding required by the VWPA and the MVRA exposes a defendant to greater punishment than that authorized by a jury verdict or guilty plea. As discussed above, we hold that an order of restitution based on such fact-finding does not violate a defendant's Sixth Amendment rights.

United States v. Paul J. Leahy

United States v. Kennard Gregg

United States v. James C. Fallon

Nos. 03-4184/03-4490/03-4542/03-4560/04-2912

SLOVITER, Circuit Judge, concurring.


I approve and join Parts I. and II. of the majority opinion. I join in the judgment of Parts III. and IV. While I believe that Judge McKee's dissent has much to commend it, in the last analysis, I join the majority because the majority opinion persuades me that restitution is not a punishment governed by the Sixth Amendment.

1

United States v. Paul J. Leahy, et al.

United States v. Kennard Gregg

United States v. James C. Fallon

Nos. 03-4184, 03-4490, 03-4542, 03-4560, and 04-2912


FISHER, Circuit Judge, with whom Judge BARRY joins, concurring in part in the judgment.

I approve and join in Parts I, II, and III of the majority opinion. I concur only in the judgment as to Part IV. I would base our holding that the imposition of restitution did not violate the Sixth Amendment right to a jury trial solely on the conclusion that restitution is not the type of criminal penalty to which the right to a jury trial attaches. As the majority opinion correctly notes, "orders of restitution have little in common with the prison sentences challenged by the defendants in Jones, Apprendi, Blakely and Booker." Maj. Op. at 19. The issue of restitution was not before the United States Supreme Court in any of those decisions, and the Supreme Court gave no indication in those decisions that the right to a jury trial applies to any form of criminal penalty other than imprisonment. Accordingly, I would not reach – and do not join – the majority's conclusion that restitution orders do not constitute an increase in punishment beyond the "statutory maximum" for the offense.

1

United States v. Paul J. Leahy, et al.

United States v. Kennard Gregg

United States v. James C. Fallon

Nos. 03-4184, 03-4490, 03-4542, 03-4560, and 04-2912

McKEE, Circuit Judge. Concurring in part and dissenting in part with Judges RENDELL, AMBRO, SMITH, and BECKER joining.

Given the Supreme Court's holding in *Libretti v. United States*, 516 U.S. 29 (1995), I agree that a judicial determination of the amount of forfeiture when imposing a criminal sentence does not violate the Sixth Amendment right to a jury trial. Although I find it difficult to reconcile *Libretti* with the Court's subsequent decisions in *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 125 S. Ct. 738 (2005), any tension between *Libretti* and those cases must be resolved by the Supreme Court, as the majority explains. *See* Maj. Op. at 9 (citing *United States v. Ordaz*, 398 F.3d 236, 241 (3d Cir. 2005)). I therefore join Section II of the majority opinion. However, for the reasons set forth below, I do not agree that a judge can determine the amount of restitution under either the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, or the Victim Witness Protection Act ("VWPA"), 18 U.S.C. § 3663, without violating the Sixth Amendment. Accordingly, I respectfully dissent from Section IV of the majority opinion (captioned, "Restitution and *Booker*").

## I.

In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court stated, "any fact (other than a prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." 530 U.S. at 476 (citation omitted). The Court later

1

characterized this as a "bright-line rule." *See Blakely* 542 U.S. at 303.

In *United States v. Syme*, 276 F.3d 131, 159 (3d Cir. 2002), we held that "restitution ordered under 18 U.S.C. § 3663 [the VWPA] constitutes 'the penalty for a crime' within the meaning of *Apprendi*." We therefore had to determine "whether the . . . restitution order increased beyond the statutory maximum the penalties that Syme faced." *Id.* "If so, the [restitution] order violated *Apprendi*." *Id.* We held that *Apprendi* did not apply because the VWPA authorizes restitution as part of the criminal sentence that is imposed upon conviction, and because the statute "does not specify a maximum amount of restitution that a court may order." *Id.* We reasoned that the VWPA "provides guidelines that a sentencing judge may use to determine the amount of restitution, but does not prescribe a maximum amount." *Id.* We concluded that "[t]he *Apprendi* rule does not apply to restitution orders . . . because *Apprendi* applies only to criminal penalties that increase a defendant's sentence 'beyond the prescribed statutory maximum.'" *Id.* (quoting *Apprendi,* 530 U.S. at 490).

However, the Court decided *Blakely* after we decided *Syme*. *Blakely* clarified that "statutory maximum" for Sixth Amendment purposes is not the maximum sentence prescribed for a given offense. Rather, "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Blakely*, 542 U.S. at 303 (emphasis in original). The Court clarified further by explaining: "In other words, the relevant 'statutory maximum' [for Sixth Amendment purposes] is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Id.* (emphasis in original). That definition of "statutory maximum" fatally undermines our analysis in *Syme*, and it is why I cannot agree with the majority's conclusion that the Sixth Amendment does not apply to orders of restitution.

2

## A.

In *Blakely*, the Court reasoned that the right to a jury trial "is meant to ensure [the people's] control in the judiciary." *Id.* at 306. The Court explained that requiring any fact (other than a prior conviction) that increases the sentence beyond that authorized by the jury's verdict alone to be proven to the jury "reflects not just respect for longstanding precedent, but the need to give intelligible content to the right of a jury trial." *Id.* at 305. "*Apprendi* carries out this design by ensuring that the judge's authority to sentence derives *wholly* from the jury's verdict." *Id.* (emphasis added). The Court explained that those who "would reject *Apprendi* are resigned to one of two alternatives." *Id.* The first is that the jury need only find facts the legislature labels as "elements of the crime." This alternative would allow the judge to find facts which are tantamount to sentencing factors, whether or not they result in an increase in punishment. *Id.* However, this reduces the jury's findings to "a mere preliminary to a judicial inquisition into the facts of the crime the State *actually* seeks to punish." *Id.* at 307. The second alternative is that "legislatures may establish legally essential sentencing factors *within limits* – limits crossed when, perhaps, the sentencing factor is a 'tail which wags the dog of the substantive offense.'" *Id.* (emphasis in original). This means that "the law must not go *too far* – it must not exceed the judicial estimation of the proper role of the judge." *Id.* (emphasis in original). However, "[w]ith *too far* as the yardstick, it is always possible to disagree with such judgments and never refute them." *Id.* at 308 (emphasis in original). "[T]he very reason the Framers put a jury-trial guarantee in the Constitution is that they were unwilling to trust the government to mark out the role of the jury." *Id.*

The bright-line rule of *Apprendi* ensures that punishment will only be imposed in a manner that is consistent with the Sixth Amendment. It ensures that "the judge's authority to sentence derives wholly from the jury's verdict." *Id.* at 306. Thus, "every defendant has a *right* to insist that the prosecutor prove to a jury all

3

facts legally essential to the punishment." *Id.* at 313 (emphasis in original). In *Booker*, the Court reaffirmed that the Sixth Amendment right "is implicated whenever a judge seeks to impose a sentence that is not solely based on 'facts reflected in the jury verdict or admitted by the defendant.'" *Booker*, 125 S. Ct. at 749.

The *Booker* Court explained that the sentencing scheme at issue in *Blakely* ran afoul of the Sixth Amendment precisely because it "violated the defendant's right to have the jury find the existence of any particular fact that the law makes essential to . . . punishment." *Id.* (internal quotation marks omitted). The judge was able to impose a sentence greater than that authorized by the jury's verdict *alone* merely by finding additional facts. *Id.* As a result, "the judge, not the jury . . . determined the upper limits of sentencing, and the facts determined were not required to be raised before trial or proved by more than a preponderance." *Id.* at 751.

Here, the majority pirouettes around *Apprendi*'s bright-line concept of "statutory maximum" by ignoring the Court's definition of that term while putting a favorable "spin" on restitution. Restitution, we are told, is "not the type of criminal punishment that evokes Sixth Amendment protection under *Booker*." Maj. Op. at 7. While conceding that restitution is a criminal sanction, the majority emphasizes that "orders of restitution have little in common with . . . prison sentences." Maj. Op. at 19. We are reminded that "[r]estitution combines features of both criminal and civil penalties." Maj. Op. at 10-11. However, that focus obfuscates the inquiry and sidesteps the analysis required by *Blakely*.

**B.**

4

In *Pasquantino v. United States*, 125 S. Ct. 1766 (2005), the Court discussed the nature of an order of restitution. There, the defendants were charged with wire fraud arising from a scheme to smuggle liquor into Canada to avoid that country's alcohol import taxes. They challenged the prosecution, arguing that the government "lacked a sufficient interest in enforcing the revenue laws of Canada." *Id.* at 1770. The argument arose from the fact that restitution of Canada's lost tax revenue was required by the MVRA. The Court rejected the defendants' argument, stating: "The purpose of awarding restitution in this action [was] not to collect a foreign tax, but to mete out appropriate criminal punishment for that conduct." *Id.* at 1777. Foreign tax collection was only incidental to the criminal prosecution. The primary objective of the prosecution was "deterrence and punishment of fraudulent conduct." *Id.* Restitution furthered that objective even though it also made the victim whole. Thus, in *Syme*, we correctly concluded: "restitution ordered under [the VWPA] constitutes the penalty for a crime within the meaning of *Apprendi*." Maj. Op. at 11 (quoting *Syme*, 276 F.3d at 159).

Here, no less than in *Pasquantino,* whatever compensation results from the defendants' prosecution is merely incidental to their criminal prosecution and sentence. The primary objective of these criminal prosecutions is clearly "deterrence and punishment" of criminal conduct, not ensuring compensation for the victims.

As the majority recognizes, this view of restitution is also required by the Supreme Court's earlier decision in *Kelly v. Robinson*, 479 U.S. 36 (1986). *See* Maj. Op. at 12. In *Kelly*, the Court had to decide if restitution imposed as part of a state criminal sentence was dischargeable in bankruptcy.[14] In resolving that inquiry, the Court noted that restitution, "[u]nlike traditional fines,

---

[14] 11 U.S.C. § 523(a)(7) exempts from discharge any condition a state criminal court imposes as part of a criminal sentence.

5

. . . is forwarded to the victim, and may be calculated by reference to the amount of harm the offender has caused." *Kelly*, 479 U.S. at 52. However, in rejecting the defendant's contention that restitution was subject to discharge under Chapter 7, the Court explained:

> The criminal justice system is not operated primarily for the benefit of victims but for the benefit of society as a whole. . . . Although restitution does resemble a judgment "for the benefit of" the victim, the context in which it is imposed undermines that conclusion. The victim has no control over the amount of restitution awarded or over the decision to award restitution. Moreover, the decision to impose restitution generally does not turn on the victim's injury, but on the penal goals of the State and the situation of the defendant.

*Id.*

Ignoring their own references to *Pasquantino* and *Kelly*, Maj. Op. at 11-12, the majority declares that "restitution is, *at its essence*, a restorative remedy that compensates victims for economic losses suffered as a result of a defendant's criminal conduct." Maj. Op. at 19 (emphasis added). That view of restitution ignores the Supreme Court's pronouncement that "[t]he purpose of awarding restitution . . . is not [to compensate the victim], but to mete out appropriate criminal punishment for that conduct." *Pasquantino*, 125 S. Ct. at 1777. That view of restitution is also inconsistent with the bright-line rule of *Apprendi*.

By ignoring that bright-line rule and redefining restitution's "essence," the majority is able to proclaim that "even though

6

restitution is a criminal punishment, it does not transform a defendant's punishment into something more severe than that authorized by pleading to, or being convicted of, the crime charged." Maj. Op. at 19. My colleagues state "restitution constitutes a return to the status quo, a fiscal realignment whereby a criminal's ill-gotten gains are returned to their rightful owner." Maj. Op. at 19. The pirouette comes full circle once my colleagues conclude: "[i]n these circumstances, we do not believe that ordering a convicted defendant to return ill-gotten gains should be construed as increasing the sentence authorized by a conviction pursuant to *Booker*." Maj. Op. at 19.

However, that is not the question. The issue is not whether returning "ill-gotten gains should be construed as increasing the sentence authorized by a conviction." Maj. Op. at 19. Rather, the question is whether the verdict "*alone*" allows the judge to impose restitution with no additional finding of fact. Obviously, it doesn't. Notwithstanding the jury's verdict, no restitution can be imposed absent a judicial determination of the amount of loss. The fact that the statute "*require[s]*" the judge to find the amount of restitution, *see* Maj. Op. at 17 n.11, does not free the restitution order from the inescapable Sixth Amendment pitfall created when the judge, and not the jury, makes the finding. "The dispositive question . . . 'is one not of form, but of effect.' If a State makes an increase in a defendant's punishment contingent on the finding of a fact, that fact – no matter how the State labels it – must be found by a jury beyond a reasonable doubt." *Ring v. Arizona*, 536 U.S. 2428, 2439 (2002) (quoting *Apprendi*, 530 U.S. at 494; internal citations omitted).

## II.

The majority believes that a defendant's conviction for specified offenses authorizes restitution "as a matter of course 'in the full amount of each victim's losses.'" Maj. Op. at 16 (quoting

7

18 U.S.C. § 3664(f)(1)(A)). Thus, according to my colleagues, the subsequent sentence of restitution "by no means impose[s] punishment beyond that authorized by the jury-found facts. Though the post-conviction judicial fact-finding determines the amount of restitution a defendant must pay, a restitution order does not punish a defendant beyond the 'statutory maximum' as that term has evolved in the Supreme Court's Sixth Amendment jurisprudence." Maj. Op. at 17. However, that analysis ignores the very meaning of "statutory maximum" and the bright-line rule of *Apprendi* that the Court erected to ensure the proper role of judge and jury.

To reiterate, "'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Blakely*, 542 U.S. at 303 (emphasis in original). "In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Id.* at 303-04 (emphasis in original). The fact that the jury's verdict authorizes restitution "in the full amount of the victim's loss" by no means allows any restitution to be imposed at all "*without* any additional findings." The jury's verdict allows the judge to make the additional finding, but restitution cannot be ordered on the basis of the jury's verdict *alone*.

## A.

The majority's analysis requires that we accept the proposition that an order of restitution rests upon the jury's verdict *alone*, even though no restitution can be imposed until the judge determines the amount of loss. We must also accept that adding a set dollar amount of restitution to a sentence does not "enhance" the sentence beyond that authorized by the jury's verdict alone. I suspect that a defendant who is sentenced to a period of imprisonment and ordered to pay restitution in the amount of $1,000,000 would be surprised to learn that his/her sentence has

8

not been enhanced by the additional penalty of $1,000,000 in restitution. "*Apprendi* held[] [that] every defendant has the *right* to insist that the prosecutor prove to a jury all facts legally essential to the punishment." *Blakely*, 542 U.S. at 313 (emphasis in original). Determining the amount of loss is "legally essential" to an order of restitution.

Yet, my colleagues agree, as they must, that, for Sixth Amendment purposes, "the 'statutory maximum' . . . is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Id.* at 303 (emphasis in original). They seek to avoid the logical consequence of that rule by suggesting that additional facts required to impose the penalty of restitution are not really "additional facts" at all. However, the Supreme Court has rejected the distinction required by the majority's analysis.

> Whether the judge's authority to impose an enhanced sentence depends on finding a specified fact [i.e. the amount of loss] . . . one of several specified facts . . . or any aggravating fact . . . , it remains the case that the jury's verdict alone does not authorize the sentence.

*Id.* at 305. I therefore cannot accept the majority's attempt to suggest that restitution is "not really" additional punishment. *See* Maj. Op. at 19 ("Restitution is, at its essence, a restorative remedy . . . .").

In *Blakely*, "[t]he application of Washington's sentencing scheme violated the defendant's right to have the jury find the existence of any particular fact that the law makes essential to his punishment." *Booker*, 125 S. Ct. at 749 (discussing *Blakely*)

9

(internal quotation marks omitted). The judge there "was *required* to find additional facts in order to impose the greater . . . sentence." *Id.* (emphasis in original). Similarly, the sentencing judges in the cases consolidated here were required to find the additional fact of the amount of loss. Thus, as in *Booker*, the effect of these restitution orders is to impermissibly "increase the judge's power and diminish that of the jury." *Id.* at 751.

My colleagues claim that the conviction alone authorizes restitution in an undetermined amount, and that the judicial determination of loss "*merely* [gives] shape to the restitution penalty born out of the conviction." Maj. Op. at 17 (emphasis added). That hairsplitting is analogous to the "constitutionally novel and elusive distinction between 'elements' and 'sentencing factors.'" *Apprendi*, 530 U.S. at 494. "[T]he relevant inquiry is one not of form, but of effect – does the required finding [of the amount of loss] expose the defendant to a greater punishment than that authorized by the jury's verdict?" *Id.* Requiring facts that increase the sentence to be proven to a jury is "not motivated by Sixth Amendment formalism, but by the need to preserve Sixth Amendment substance." *Booker*, 125 S. Ct. at 752. Restitution in any amount greater than zero clearly increases the punishment that could otherwise be imposed.[15]

---

[15] The majority's view that "[i]n imposing restitution, a district court is . . . by no means imposing a punishment beyond that authorized by jury-found or admitted facts" is fallacious. To demonstrate that the maximum amount of restitution authorized by the conviction is $0, and any increase beyond that figure requires the District Court to make additional findings of fact, we offer the following.

What, exactly, is the amount of loss? When the judge says to the defendant, "I order you to pay restitution in the amount of ____," what does the judge use to fill in the blank? Certainly it is not enough to say "I order you to pay restitution in the full amount of the victim's loss"; we suspect that the victim might be disappointed with the size of the check he ultimately receives under such a scenario. For this reason, the judge must order restitution *in*

10

*a specific amount*, and in order to do so, he or she must make *a factual determination* of the size of the victim's loss. It is this factual determination, and not the simple act of conviction, that determines the maximum award that may be imposed. That is why, in this case, the District Court did not order restitution "in the full amount of the victim's loss"; instead, it ordered restitution in the amount of $408,970 for Leahy, $55,235 for Fallon, and $350 for Gregg.

Of course, the determination of "the full amount of the victim's loss" plainly is an "additional finding." So, the majority's argument requires us to accept that district courts can somehow impose restitution "in the full amount of the victim's loss" without making a factual determination as to what that amount is. We have many fine district judges in this Circuit, but we know of none capable of this feat.

The majority fails to realize that without additional findings, the maximum sentence that may be imposed in the form of restitution is $0. To see why this is true, consider a typical first-time defendant convicted of possession with intent to distribute in violation of 18 U.S.C. § 841(a)(1). For simplicity's sake, we will focus solely on the issue of drug quantity, and assume that the jury has found that the substance at issue is cocaine and that no other sentencing elements (such as criminal history) are relevant. Under the Guidelines, the District Court could impose a sentence of 10-16 months based solely on the fact of conviction, without making any more factual findings. If the District Court later determines that the defendant possessed more than 25 grams of cocaine, then it may, in accordance with the Guidelines, impose a higher sentence.

In truth, the determination of drug quantity in this scenario is precisely equivalent to the determination of the victim's loss in the restitution example. In the same way that conviction authorizes a judge to impose restitution "in the full amount of the victim's loss," so too does conviction for possession with intent to distribute under 18 U.S.C. § 841(a)(1) authorize the judge to impose "the appropriate Guidelines sentence of incarceration, based on the quantity of the drugs possessed by the defendant."

The only real difference between the two situations is that a judge imposing restitution starts from a baseline of $0 and then makes a determination of fact regarding the actual amount of the

11

**B.**

The majority finds some comfort in being able to "join[] the Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Circuits" in holding "that *Booker* does not apply to orders of restitution under the MVRA and VWPA." Maj. Op. at 18. However, before *Booker* was decided, one could have developed an even more impressive list of the courts that had incorrectly concluded that *Apprendi* does not apply to the federal sentencing guidelines.[16] Moreover, the

victim's loss, while a judge imposing incarceration for violating § 841(a)(1) starts from a baseline of 10-16 months and then makes a determination of fact regarding the actual quantity of drugs sold. Just as the maximum sentence under § 841(a)(1) without additional findings is 10-16 months, the maximum amount of restitution without additional findings is $0.

Of course, the restitution statutes actually authorize or require restitution in the full amount of the victim's loss—just like the Sentencing Guidelines require incarceration in accordance with the quantity of drugs the defendant actually sold. The only relevance of the 10-16 month range is that it is the penalty that may be imposed *without* any additional findings—just like the maximum award of restitution that may be imposed *without* any additional findings is $0. In both cases, however, the judge is required to make additional findings which will increase the sentence beyond the maximum authorized solely by conviction. The distinction that the majority draws between the pre-*Booker* Sentencing Guidelines and restitution under the VWPA or MVRA simply is not a meaningful one. In both cases, the judge makes factual determinations that increase the maximum penalty that may be imposed. For this reason, both schemes run afoul of the Sixth Amendment.

[16] United States v. Goodine, 326 F.3d 26, 27 (1st Cir. 2003); *United States v. Luciano*, 311 F.3d 146, 153 (2d Cir. 2002); *United States v. Cepero*, 224 F.3d 256, 268 n.5 (3d Cir. 2000); *United States v. Cannady*, 283 F.3d 641, 649 n.7 (4th Cir. 2002); *United*

cases the majority cites from other circuit courts are not very helpful.

In *United States v. Sosebee*, 419 F.3d 451 (6th Cir. 2005), the court rejected a claim that orders of restitution are subject to the Sixth Amendment by concluding that "restitution statutes do not specify a statutory maximum," *id*. at 461, without ever considering *Blakely's* definition of that term or even discussing *Blakely* as part of its Sixth Amendment analysis. In addition, *Sosebee* attempts to distinguish *Booker* by referring to the fact that "restitution orders are authorized by statute." *Id.* at 462. However, the fact that restitution arises from statute rather than a guideline is obviously irrelevant to a Sixth Amendment analysis. Constitutional rights are not subject to legislative repeal. *See Ring*, 536 U.S. 584. As noted at the outset, "the very reason the Framers put a jury-trial guarantee in the Constitution is that they were unwilling to trust the government to mark out the role of the jury." *Blakely*, 542 U.S. at 308.[17]

The analysis in *United States v. George*, 403 F.3d 470 (7th Cir. 2005), is driven by the fact that the court considers restitution a civil penalty. The court states: "There is no 'statutory maximum' for restitution; indeed, it is not a criminal punishment but . . . a civil

---

*States v. Randle*, 304 F.3d 373, 378 (5th Cir. 2002); *United States v. Harper*, 246 F.3d 520, 530 (6th Cir. 2001); *United States v. Cole*, 298 F.3d 659, 663 (7th Cir. 2002); *United States v. Mora-Higuera*, 269 F.3d 905, 911 (8th Cir. 2001); *United States v. Ochoa*, 311 F.3d 1133, 1135 (9th Cir. 2002); *United States v. Wilson*, 244 F.3d 1208 (10th Cir. 2001); *United States v. Sanchez*, 269 F.3d 1250, 1262 (11th Cir. 2001); *United States v. Fields*, 251 F.3d 1041, 1043 (D.C. Cir. 2001).

[17] Sosebee also relies in part upon our holding in *Syme*. *See* 419 F.3d at 461. As I have already explained, our decision there cannot survive *Blakely*.

13

remedy administered for convenience by courts that have entered criminal convictions . . . ." *Id*. at 473.

In *United States v. Garza,* 429 F.3d 165, 169-70 (5th Cir. 2005), the Court of Appeals for the Fifth Circuit also concluded *Booker* does not directly affect the MVRA because it is a statute (as opposed to a guideline), without attempting to explain why that "distinction" is relevant to a Sixth Amendment analysis. With no analysis, the court proclaims that judicial fact-finding for restitution does not violate the Sixth Amendment. The court then states that "even if there were *Booker* error in the restitution order, any error would certainly not be plain under current law." *Id*. at 170. The court used the plain error standard because the defendant had not objected to the order of restitution. The court does not cite *Blakely* in that part of its analysis, nor does it explain why a violation of a Sixth Amendment right to a jury finding would not affect substantial rights as required for plain error under *United States v. Olano*, 507 U.S. 725 (1993).

In *United States v. May*, 413 F.3d 841, 849 (8th Cir. 2005), the Court of Appeals for the Eighth Circuit concluded "that restitution does not have a 'statutory maximum.'" The court also concluded that, even if there had been a *Booker* error, it could not be plain because neither the Supreme Court nor the Eighth Circuit has held that *Booker* applies to restitution. *Id.* However, here again, there is no discussion of what is meant by "statutory maximum" for purposes of the Sixth Amendment.

In *United States v. Bussell*, 414 F.3d 1048, 1060 (9th Cir. 2005), the defendant challenged imposition of costs and restitution, but the challenge to restitution rested on her claim that the court erred in relying upon the *intended* loss rather than the actual loss. With no discussion of *Blakely*, the court decreed: "[i]n contrast to its application of the Sentencing Guidelines, the district court's orders of restitution and costs are unaffected by the changes

14

worked by *Booker*." The court relied upon *United States v. DeGeorge*, 380 F.3d 1203, 1221 (9th Cir. 2004), and *United States v. Chavez*, 627 F.2d 953, 957 (9th Cir. 1980), in reaching this conclusion. However, *Chavez*, was decided in 1980, long before *Apprendi* and *Blakely*. *DeGeorge*, like *Bussell*, states only that restitution orders pursuant to the VWPA are "unaffected by *Blakely*." The court in *DeGeorge* simply cited a 1994 Ninth Circuit case which stated that "restitution determinations under the VWPA are quite different from sentencing determinations under the Sentencing Guidelines." *DeGeorge*, 380 F.3d at 1221 (internal citation omitted). Moreover, the court in *DeGeorge* specifically stated that, because it was reversing on other grounds, "we will not address the *Blakely* issues here; instead, DeGeorge is free to raise them on remand." *Id.* at 1220. Thus, *DeGeorge* does not advance the Sixth Amendment inquiry in *Bussell,* even though the latter court relies upon it.

The final case cited by the majority in support of its restitution determination is *United States v. Visinaiz*, 428 F.3d 1300 (10th Cir. 2005). There, in its brief discussion of restitution under *Blakely* and *Booker*, the court stated: "[i]n the Tenth Circuit, restitution is not criminal punishment." *Visinaiz*, 428 F.3d at 1316. Accordingly, *Visinaiz* does not further the majority's inquiry because the majority properly views restitution as a *criminal* punishment as required by *Pasquantino* and *Kelly*.

## III.

In attempting to distinguish restitution from imprisonment, the majority notes that *Apprendi* and its progeny all involved rather substantial increases in terms of incarceration based upon judicial fact-finding. The majority notes that, "[i]n those cases, the Supreme Court was faced with 'exceptional' and 'enhanced' sentences that added anywhere from two to ten years to the prison terms authorized by the facts found by the jury or pled to by the

15

defendants." Maj. Op. at 19.

I agree that this distinction has some merit. For example, the defendant in *Blakely* "was sentenced to prison for more than three years beyond what the law allowed for the crime to which he confessed." *Blakely*, 542 U.S. at 313. However, nothing in the Supreme Court's analysis in *Apprendi* or its progeny (including *Blakely*) suggests that the Supreme Court would tolerate this distinction or that the Sixth Amendment allows it. In fact, the Court says quite the opposite in holding that the Sixth Amendment applies to *any* fact-finding that increases the sentence beyond that which could be imposed based upon the jury's verdict alone. As I have already explained, *Apprendi* requires that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. The majority limits that rule to increases in terms of imprisonment. However, that limitation requires us to turn a blind eye to the meaning of "statutory maximum." It merits repeating yet again that "'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Blakely*, 542 U.S. at 303 (emphasis in original).[18]

---

[18] The Court emphasized this language for a reason, and I cannot deemphasize it as readily as the majority's analysis requires. Even if we could somehow assume that determining the amount of loss did not expose a defendant to greater punishment, determining the amount of loss would still be essential to the restitution order. Therefore, restitution does not rest "*solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" Rather, it rests substantially on the judicial determination of the amount of loss. It is therefore somewhat misleading to suggest that the "key question under the *Booker* analysis is whether the judicial fact-finding required by the VWPA and the MVRA exposes a defendant to greater punishment than that authorized by a jury verdict or guilty plea." Maj. Op. at 19, n. 13. Even assuming *arguendo* that a defendant is not exposed to a greater punishment, his/her

16

The Court could easily have limited its Sixth Amendment analysis by defining "statutory maximum" as the maximum sentence of incarceration or confinement (rather than punishment) that a judge may impose on the basis of the verdict alone. Given the backdrop of *Pasquantino* and *Kelly*, the Court would almost certainly have used language that would have limited the reach of its analysis to enhancements that result in a deprivation of liberty if the Court intended to restrict the Sixth Amendment as the majority does. The Court could also have limited the reach of *Apprendi* to any fact that "substantially" increases the sentence. The Court did neither.

I submit that it is difficult to read the majority's attempt to rationalize the limits it places on the Court's Sixth Amendment jurisprudence without concluding that, in essence, the majority essentially believes that applying *Apprendi* to orders of restitution simply stretches the Sixth Amendment too far. However, *Blakely* specifically rejects that limitation by noting that the Framers would not have left the "definition of the scope of jury power up to judges' intuitive sense of how far is *too far*." *Blakely*, 542 U.S. at 308. Rather, the Court created a bright-line rule. *Id.* Pursuant to that rule, *any* factual finding (other than a prior conviction) that increases the defendant's punishment beyond that authorized by the jury's verdict alone must be proven beyond a reasonable doubt to a jury or admitted by the defendant. Our decision today cannot be reconciled with that rule.

I do, of course, realize that the precise issue of the application of the Sixth Amendment to restitution orders was not before the Court in *Apprendi* or its progeny. It is therefore quite possible that the Court never considered the precise issue that we are deciding when it crafted those landmark opinions. Nevertheless, given the Court's recent jurisprudence, we are not at

sentence is still based on facts not found by a jury or admitted in a plea.

17

liberty to rationalize a distinction between punishment in the form of incarceration on the one hand, and punishment in the form of restitution on the other. Given the clear pronouncements in *Apprendi* and *Blakely*, any such distinction must be drawn by the Court in the first instance, and not by us. *See Ordaz*, 398 F.3d at 241.

A sentencing court may impose restitution under the VWRA, and it *must* do so under the MVRA. I agree with the majority's conclusion that "the distinction between the permissive language of VWPA and the mandatory language of the MVRA is immaterial." Maj. Op. at 14. Under neither statute does the restitution order rest "*solely*" upon the jury's verdict. A finding of loss necessarily is a condition precedent to an order of restitution, and under both statutes, it is the judge who makes the finding. As I have explained, the imposition of this additional criminal penalty based on a fact not found by a jury violates the Sixth Amendment. Therefore, I respectfully dissent from the majority's conclusion that the Sixth Amendment does not apply to orders of restitution.

18

United States v. Paul J. Leahy

United States v. Kennard Gregg

United States v. James C. Fallon

Nos. 03-4184/03-4490/03-4542/03-4560/04-2912

AMBRO, Circuit Judge, concurring and dissenting in part


I write separately to note my view that both the majority and dissenting opinions are grounded in reasonable interpretations of Booker's effect on restitution. On the one hand, Judge Fuentes' opinion pragmatically avoids an outcome whose consequences—mandating the Government to prove loss amount to a jury beyond a reasonable doubt whenever it seeks restitution for victims—may prove cumbersome to implement. On the other hand, the broad language of Blakely and Booker appears to dictate that any fact controlling the maximum sentence that can be imposed must be admitted or proven to the jury. Thus, as articulated in Judge McKee's dissent, under the federal restitution statutes the amount of loss—because it controls the maximum restitution that can be imposed—must be subject to the Sixth Amendment's jury requirement. Indeed, the difficulty of resolving the question before us, and the fact that Booker nowhere mentions restitution (though, to be fair, restitution was not an issue in Booker), suggest that the Supreme Court did not take restitution penalties into consideration in crafting the Booker remedy. Until the Supreme Court directs us otherwise, however, I believe that the broad language of Booker obligates us to hold that the Sixth Amendment applies to orders of restitution under the MVRA and VWPA. Therefore, I join in its entirety Judge McKee's opinion concurring in part and dissenting in part.

1

United States v. Paul J. Leahy, et al.

United States v. Kennard Gregg

United States v. James C. Fallon

Nos. 03-4184, 03-4490, 03-4542, 03-4560, and 04-2912

SMITH, Circuit Judge, concurring in part and dissenting in part.

I join in its entirety Judge McKee's opinion concurring in part and dissenting in part. I write separately to note a particular concern arising out of Part IV of the majority opinion.

The majority rests its opinion upon a distinction between the facts "authorizing restitution of a specific sum, namely 'the full amount of each victim's loss'" and the facts "merely giving definite shape to the restitution penalty born out of the conviction." Maj. Op. at 17. The majority implicitly holds that under the Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 125 S.Ct. 738 (2005), only the facts which *authorize a "specific" punishment*, and not the facts which *give "definite shape" to that punishment*, must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt

I suggest that this is a distinction that district courts will find difficult to understand and apply in other circumstances. Consequently, the majority opinion does not satisfy "the need to give intelligible content to the right of jury trial." *See Blakely*, 542 U.S. at 305. As the Supreme Court explained in *Blakely*, defining a right to a jury trial with intelligible content is a necessary step in protecting the people's ultimate control over the judiciary, as the Framers of the Sixth Amendment intended. *See id.* at 305-06.

Indeed, the Court in *Blakely* explicitly rejected a similar two-step approach to setting criminal punishments–first allowing the jury to determine that the defendant's actions warranted criminal punishment, and then allowing the court to determine the actual details of the crime–for precisely this reason. *See id.* at 306-

1

07 ("The jury could not function as circuitbreaker in the State's machinery of justice if it were relegated to making a determination that the defendant at some point did something wrong, a mere preliminary to a judicial inquisition into the facts of the crime the State *actually* seeks to punish.") (emphasis in original). Accordingly, because our decision today renders the right to a jury trial considerably less intelligible, and consequently undermines the people's constitutionally-protected right to ultimate control over the judicial branch, I join Judge McKee and respectfully dissent from Part IV of the majority opinion.